The STATE of Ohio, Appellee,

v.

PERKINS, Appellant.

[Cite as *State v. Perkins,* 154 Ohio App.3d 631, 2003-Ohio-5092.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19620.

Decided Sept. 26, 2003.

David H. Fuchsman, for appellee.

Glen H. Dewar, for appellant.

FREDERICK N. YOUNG, Judge.

{¶ 1} William A. Perkins appeals from the judgment of the Montgomery County Court of Common Pleas, Area One, which found him in direct criminal contempt and sentenced him to fifteen days' incarceration. He also appeals from the trial court's judgment, which cites him in contempt for failure to appear at a previous hearing.

{¶ 2} On August 9, 1994, Perkins was charged with one count of domestic violence, in case number CRB 9402001. After Perkins failed to appear for the arraignment and the pretrial on three separate occasions, a bench warrant was issued for his arrest. During this time, Perkins was also charged with committing petty theft, in case number CRB 9402874. Perkins also failed to appear for the pretrial in this case, and a separate bench warrant was issued for his arrest.

{¶ 3} At this point, the record becomes unclear. A payment agreement filed by the trial court indicates that Perkins was in custody on February 23, 1995, and that he had indicated to the trial court that he was unable to pay the fines and court costs totaling $148 on the petty theft charge. The trial court explained that Perkins must pay the amount in full by March 1, 1995, or else a show-cause hearing would be held. That same day, the trial court filed an entry stating that Perkins had been sentenced to ninety days' incarceration; however, this sentence was suspended upon the condition that he pay as ordered. Again, Perkins failed to pay, and a bench warrant was issued for his arrest on March 18, 1995.

{¶ 4} Perkins was arrested, and a pretrial was held on both cases on December 2, 1996. Perkins pled guilty in the petty theft case to an amended charge of unauthorized use of property in violation of R.C. 2913.04. Perkins was given a ninety-day sentence, but the sentence was suspended, and he was placed on supervised probation for one year with the condition that he pay all fines and court costs in that case totaling $217. The trial court ordered Perkins to pay $25 of the fines and costs by December 6, 1996, or a motion to show cause would be filed.

{¶ 5} In the domestic violence case, Perkins pled guilty to the amended charge of disorderly conduct, in violation of R.C. 2917.11. The trial court filed a payment order stating that fines and costs due were $132, and that if Perkins did not pay $25 of the fines and costs by December 6, 1996, a motion to show cause would be filed.

{¶ 6} Apparently, Perkins paid none of the monies due on either of the cases and failed to appear in court. On March 8, 1997, the trial court filed another notice in each case ordering his appearance before the trial court on April 10, 1997, or payment of both of the monies owed in full to avoid a warrant issued for his arrest. The bench warrants were issued on April 17, 1997.

{¶ 7} Perkins was again arrested and brought before the trial court on June 2, 1997. He was found to be in contempt on both cases, and sentenced to thirty days' incarceration on each charge; however, the sentences were suspended on the condition that he paid all monies owed on both cases within ninety days. Perkins signed payment orders agreeing to pay $73 for fines and costs in case number CRB 9402001 by July 2, 1997, and $177 in fines and costs on case number CRB 9402874 by September 2, 1997. The payment orders specified that if Perkins was unable to pay by the listed dates, he was to appear before the trial court and show cause why he should not be held in contempt and why his sentences should not be imposed, or to request an extension of time to pay the fines and costs.

{¶ 8} The trial court issued another bench warrant on December 30, 1999, under case number CRB 9402001. Perkins was arrested on August 20, 2001. In court, Perkins stated that he was going to start making payments, and the trial court ordered that he be set up with a payment plan. The payment plan was implemented so that Perkins would pay $67.50 per week, for two weeks, on each of his cases; both amounts were to be paid in full by September 4, 2001.

{¶ 9} When Perkins failed to pay, a bench warrant was issued on November 30, 2001, under case number CRB 9402001. Perkins was arrested on September 24, 2002, and appeared before the trial court via video from the jail. The trial court stated that it was going to "cite [him] in contempt for failure to appear as ordered," and referred Perkins to the public defender's office. The trial court set

bond at $5,000, ten percent, and scheduled a show-cause hearing for October 7, 2002.

{¶ 10} Several minutes after the completion of Perkins's case, and in the middle of another unrelated case, the trial court heard an unidentified voice off camera state "That's bullshit." The trial court requested that the individual be brought to the camera in view of the trial court. When Perkins again appeared before the camera, the trial court asked him what he had just said. Perkins replied as follows:

{¶ 11} "How can you give me a blanket for $5,000—

{¶ 12} "THE COURT: What did you just say sir?

{¶ 13} "MR. PERKINS: I said it's bullshit, I never—"

{¶ 14} The trial court found Perkins in criminal contempt and sentenced him to thirty days in jail. On September 26, 2002, the trial court filed a decision and judgment finding Perkins in "direct criminal contempt" and sentencing him to fifteen days in jail.

{¶ 15} On October 2, 2002, Perkins filed a motion requesting that the trial court order that his fines had been satisfied based upon R.C. 2947.14(D), which states that a person who is held in custody for failure to pay fines shall receive credit on the fine at $50 per day. Perkins also requested that the trial court release him from custody. The trial court filed a decision the next day overruling Perkins's motion, stating that it was holding Perkins on a "contempt citation for failure to appear, not for failure to pay his fines," and therefore R.C. 2947.14 was inapplicable to the situation.

{¶ 16} Perkins appeals from that ruling of the trial court, asserting three assignment of error:

{¶ 17} We will address Perkins's first and second assignments of error simultaneously, as they are very similar.

{¶ 18} "The trial court erred by using contempt instead of civil means to enforce the collection of court costs."

{¶ 19} "The trial court erred by using contempt instead of R.C. 2947.14 for enforcing the collection of fines."

{¶ 20} According to Perkins, the trial court erred in proceeding to enforce the collection of the monies that Perkins owed via a contempt proceeding, instead of utilizing the proper method for collection provided under R.C. 2947.14.

{¶ 21} R.C. 2947.14 states:

{¶ 22} "(A) If a fine is imposed as a sentence or a part of a sentence, the court or magistrate that imposed the fine may order that the offender be committed to

the jail or workhouse until the fine is paid or secured to be paid, or the offender is otherwise legally discharged, if the court or magistrate determines at a hearing that the offender is able, at that time, to pay the fine but refuses to do so. The hearing required by this section shall be conducted at the time of sentencing.

{¶ 23} "(B) At the hearing, the offender has the right to be represented by counsel and to testify and present evidence as to the offender's ability to pay the fine. If a court or magistrate determines after considering the evidence presented by an offender, that the offender is able to pay a fine, the determination shall be supported by findings of fact set forth in a judgment entry that indicate the offender's income, assets, and debts, as presented by the offender, and the offender's ability to pay.

{¶ 24} "(C) If the court or magistrate has found the offender able to pay a fine at a hearing conducted in compliance with divisions (A) and (B) of this section, and the offender fails to pay the fine, a warrant may be issued for the arrest of the offender. Any offender held in custody pursuant to such an arrest shall be entitled to a hearing on the first regularly scheduled court day following the date of arrest in order to inform the court or magistrate of any change of circumstances that has occurred since the time of sentencing and that affects the offender's ability to pay the fine. The right to the hearing on any change of circumstances may be waived by the offender. * * *

{¶ 25} "(D) No person shall be ordered to be committed to a jail or workhouse or otherwise be held in custody in satisfaction of a fine imposed as the whole or a part of a sentence except as provided in this section. Any person imprisoned pursuant to this section shall receive credit upon the fine at the rate of fifty dollars per day or fraction of a day. If the unpaid fine is less than fifty dollars, the person shall be imprisoned one day."

{¶ 26} The hearing requirement under R.C. 2947.14(A) protects the accused's right to not be imprisoned for nonpayment of a fine due to indigency. See *Williams v. Illinois* (1970), 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586; and *Tate v. Short* (1971), 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130. Although the statute states that the hearing must be held "at the time of sentencing," Ohio's courts have read R.C. 2947.14 in its entirety and concluded that the hearing requirement "does not arise until the trial court decides to incarcerate the offender for failure to pay." *State v. Meyer* (1997), 124 Ohio App.3d 373, 375, 706 N.E.2d 378. See, also, *State v. Cochran* (June 5, 1998), Clark App. No. 97–CA–50, 1998 WL 288942; *Huber Hts. v. Weaver* (Jan. 12, 1987), Montgomery App. No. CA 9465, 1987 WL 5534.

{¶ 27} In this case, the record is unclear as to the real reason for Perkins's incarceration. In the September 26, 2002 decision and judgment, the court noted

that Perkins's exclamation of "That's bullshit" subsequent to his leaving the podium was the behavior that "constituted direct criminal contempt" and for this he was sentenced to fifteen days. Also in that entry, the trial court stated that "[d]ue to [Perkins's] failure to appear as previously ordered," he was "cited in contempt and bond was set at $5,000, 10%." Additionally, several days later the trial court responded to Perkins's motion to order fines satisfied, and noted in its October 3, 2002 decision and order that it was overruling Perkins's motion because he was "being held on a contempt citation for failure to appear, not for failure to pay his fines."

{¶ 28} We note that in *Strongsville v. Waiwood* (1989), 62 Ohio App.3d 521, 577 N.E.2d 63, the Eighth District Court of Appeals found that an arrest warrant issued after the defendant failed to attend a hearing for failure to pay court costs was defective because the failure to pay court costs is a civil liability, not an obligation, such as a fine, that subjects a debtor to arrest. We agree with the *Waiwood* court's conclusion, and find that the trial court erred in failing to follow the procedures set forth in R.C. 2947.14.

{¶ 29} In this instance, if the trial court sentenced Perkins to fifteen days in jail due to his failure to appear, his rights under R.C. 2947.14 have clearly been violated, and we must reverse. Additionally, if the trial court found Perkins in contempt solely due to his utterance, and not because of his failure to appear, then there is no violation of R.C. 2947.14(A), as the procedural safeguards under that section do not arise until the hearing in which the trial court decides to sentence the accused to jail time due to the failure to pay. However, we find that the trial court violated R.C. 2947.14(C), as the failure to pay court costs in this instance is a civil liability and not an obligation that would subject Perkins to arrest until the final hearing pursuant to R.C. 2947.14(A).

{¶ 30} Regardless of the reason that the trial court sentenced Perkins to fifteen days in jail, we must reverse the judgment of the trial court and remand it for clarification of its reasons for finding Perkins in contempt and to comply with the mandates of R.C. 2947.14.

{¶ 31} Additionally, the trial court must also calculate the appropriate amount of credit due to Perkins toward the outstanding fines for any time actually served, pursuant to R.C. 2947.14(D).

{¶ 32} Perkins's first and second assignments of error are sustained.

{¶ 33} Perkins's third assignment of error states:

{¶ 34} "The trial court erred by finding appellant in direct criminal contempt for uttering the word 'bullshit' while off camera in the county jail's video courtroom during arraignments."

{¶ 35} Perkins asserts that the trial court abused its discretion in holding him in criminal contempt because his utterance "was a personal commentary regarding his bond" and that it did not cause an interruption or delay in the court proceedings.

{¶ 36} Under R.C. 2705.01, a trial court "may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." Contempt may be direct, meaning that the conduct occurs in the presence of the court, or indirect, where the contempt occurs outside the court's presence, but obstructs the orderly administration of justice. *State v. Belcastro* (2000), 139 Ohio App.3d 498, 501, 744 N.E.2d 271. "Direct contempt usually involves some misbehavior which takes place in the actual courtroom," *In re Purola* (1991), 73 Ohio App.3d 306, 310, 596 N.E.2d 1140, and therefore may be summarily punished because the trial court has direct knowledge of the facts. *In re Davis* (1991), 77 Ohio App.3d 257, 263–275, 602 N.E.2d 270.

{¶ 37} A trial court's ruling on a contempt will not be disturbed on appeal absent an abuse of discretion. *Alexander v. Oiler* (Jan. 10, 1997), Clark App. No. 96–CA–03, 1997 WL 7166. An abuse of discretion amounts to more than a mere error in judgment but connotes that the trial court demonstrated an unreasonable, arbitrary, or unconscionable attitude. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 38} As we previously discussed, in this case, the trial court's September 26, 2002 decision and judgment found Perkins to be in contempt for uttering "That's bullshit" subsequent to his arraignment and during another unrelated court proceeding. Despite the fact that the entry stated that he was "cited in contempt" for his failure to appear previously, we will only address whether it was an abuse of discretion for the trial court to find him in contempt for his utterance.

{¶ 39} In this case, the trial court had concluded the arraignment of Perkins and had called another case before the bench. Several minutes later, the trial court heard "That's bullshit" stated off camera, but in the midst of another proceeding. The trial court had to stop the proceeding to investigate who had made the statement and for what reason. The trial court discovered that it was Perkins who had made the statement and asked him to be brought before the camera. The trial court then addressed Perkins's utterance, and found him to be in contempt.

{¶ 40} The alleged contempt in this case may be classified as direct criminal contempt because the act of Perkins's saying "bullshit" and thereby disrupting a separate court proceeding occurred "in the presence of or so near the court or

judge as to obstruct the administration of justice," and the trial court imposed a definite jail term to punish the conduct and to vindicate the authority of the law and the court. See R.C. 2705.01; *Brown v. Executive 200* (1980), 64 Ohio St.2d 250, 253–254, 18 O.O.3d 446, 416 N.E.2d 610; *Schrader v. Huff* (1983), 8 Ohio App.3d 111, 113, 8 OBR 146, 456 N.E.2d 587.

{¶ 41} Perkins would like us to believe that it was the overreaction of the trial court that was the disruptive factor when the trial court temporarily stopped the hearing and actively searched for the person who made the comment. We disagree. Perkins made the statement after his arraignment and during another official court proceeding. The statement caused the trial court to temporarily halt those proceedings to investigate who had made the statement and why the statement had been made. We agree with the trial court that it was due to Perkins's outburst that the proceedings had to be halted, and that the disruption occurred because of Perkins, not due to an "overreaction" of the trial court. Additionally, we cannot find that the trial court abused its discretion in finding that it was necessary to summarily punish Perkins's behavior to vindicate the authority of the court.

{¶ 42} Perkins also asserts that he cannot be guilty of contempt because he did not make the statement with the intent to obstruct the administration of justice. "[A] person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Mulligan,* Montgomery App. No. 19359, 2003-Ohio-782, 2003 WL 366765, citing *In re Purola,* supra, 73 Ohio App.3d at 312, 596 N.E.2d 1140. Accordingly, there is evidence in the record to support Perkins's direct criminal contempt, and we cannot say that the trial court abused its discretion.

{¶ 43} We overrule Perkins's third assignment of error.

{¶ 44} The judgment of the trial court is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

> Judgment affirmed in part,
> reversed in part
> and cause remanded.

BROGAN and GRADY, JJ., concur.