DECISION AND ENTRY
{¶ 1} This matter is before us on a motion for reconsideration filed by Appellant, Kevin Self. Self was originally charged in Montgomery County Court Area Two, Traffic Division, with driving under suspension (DUS) and failing to obey a red light. See State v. Self, Montgomery App. No. 20370, 2005-Ohio-310, at ¶ 1. After Self pled no contest, the trial court found him guilty and eventually sentenced him to thirty days in jail on the DUS charge, plus $100 and costs. The court then suspended thirty days of the sentence. In addition, the court sentenced Self to $10 and costs for the red light violation.
 {¶ 2} Ultimately, after failing either to pay fines or perform community service, Self was ordered to serve thirty days in jail. Self then appealed, alleging that: 1) that the trial court erred in sentencing him to thirty days in jail for non-payment of combined fines and court costs totaling $253; and 2) that the trial court failed to follow R.C.2947.14 when it ordered him to serve a term of incarceration for non-payment of fines. We rejected both assignments of error, stating that:
 {¶ 3} "a review of the record reveals that the court ordered Self to serve the previously suspended sentence not for failure to pay, but for failure to comply with community control sanctions by choosing to ignore court orders, including the court's order to perform court-ordered community service." Id. at ¶ 13.
 {¶ 4} We also commented that:
 {¶ 5} "In a case such as this, where a defendant chooses not to comply with any of the conditions of his community control sanctions, the trial court has the authority to reinstate the previously suspended sentence. R.C. 2929.25. Moreover, pursuant to R.C. §§ 2705.02(A) and 2705.05(A), the trial court had the authority to sentence Self to thirty days in jail for contempt. Self's first assignment of error is overruled.
 {¶ 6} "Furthermore, because the trial court did not order Self's incarceration for non-payment, but for repeated contempt of court and violation of community control sanctions, R.C. 2947.14 is inapplicable. Accordingly, Self's second assignment of error is without merit and is overruled." Id. at ¶ s 16-17.
 {¶ 7} The test applied to motions for reconsideration is whether they alert a court to obvious errors in its decision or raise issues that the court either failed to consider or did not fully address. City ofColumbus v. Hodge (1987), 37 Ohio App.3d 68. In this regard, Self claims that our opinion contains two errors. The first pertains to our statements about community control sanctions. Specifically, Self contends that he was never sentenced to community control sanctions nor was he ever placed on probation. The second alleged error involves our comment that the trial court sentenced Self to jail for contempt. Again, Self claims that the trial court never mentioned contempt and never initiated any contempt action.
 I {¶ 8} In order to properly evaluate Self's request, we must first outline the procedural history of this case, which is somewhat complicated. As we mentioned, Self was charged with violating R.C.4705.02(A)(1) or driving without a valid operator's license (DUS). An individual who violates this statute is guilty of a misdemeanor of the first degree. Under R.C. 2929.24(A)(1), 180 days in jail is the maximum possible sentence that may be imposed for a misdemeanor of the first degree.
 {¶ 9} Self was originally charged with DUS on November 16, 2001, and was summoned to appear in court on November 27, 2001. When he failed to appear, a bench warrant was issued. The record does not indicate precisely when Self was arrested on the bench warrant, but he did sign an "acknowledgment of release" with Montgomery County Pretrial Services on January 4, 2002, agreeing to appear for a scheduled court date on January 8, 2002.
 {¶ 10} Self appeared in court on January 8, 2002, and pled no contest to the DUS and red light violations. After Self explained the circumstances surrounding his offenses, the court gave him 45 days to return to court with his operator's license reinstated. Self returned on the appointed day, and explained why he had not been able to complete the necessary papers. The court then gave Self 45 more days to complete paperwork, and set the matter for sentencing on April 16, 2002.
 {¶ 11} Self did not appear in court on April 16, 2002, and a bench warrant for his arrest was issued on April 29, 2002. However, the failure to appear at that point was apparently not Self's fault. The record indicates that Self was in Montgomery County Jail, and someone at the jail failed to put Self on video for the court appearance. The error was acknowledged when Self subsequently appeared before the court on April 30, 2002. At that time, the court withdrew the bench warrant. Before imposing sentence, the court asked Self if he had obtained an operator's license. Self explained that he had not been successful, due to the high amount of the reinstatement fee ($1,500). The court stated that it was aware of the difficulty in paying such a high fee. The court then sentenced Self to thirty days for driving under suspension, with thirty days suspended, plus $100 for the fine and $80 in costs. Additionally, the court sentenced Self to a $10 fine, plus $33 in costs for the red light violation, for a total in fines and costs of $223. Nothing was said in the hearing, nor was anything filed with the court, indicating that Self was being placed on community control sanctions or on probation.
 {¶ 12} Self signed a document agreeing to pay the fines and costs in total by May 28, 2002. However, Self failed to pay. As a result, the court filed an order on June 7, 2002, stating that Self was to pay $223 before June 27, 2002 or report for community service at the courthouse on June 28, 2002. A bench warrant was then issued on July 3, 2002, for Self's arrest, due to his failure to appear for community service or to pay all past due fines and costs.
 {¶ 13} Subsequently, on October 8, 2002, Self appeared again before the court. The record does not indicate when or if Self was arrested, or how he came before the court, but one would assume he was arrested pursuant to the bench warrant issued on July 3, 2002. In any event, Self appeared on October 8, 2002, before a different judge than the one who had previously handled the case. When this judge asked Self why he had not paid, Self explained that he had lost his job and had just begun working. The judge did not mention community service. At that time, the judge told Self to return to court on October 15, 2002. The judge noted that if Self did not have the fine paid before then, Self was to come back on October 15 to show cause.
 {¶ 14} Self returned to court as instructed on October 15, 2002. No record was made of that hearing. However, Self signed agreements on October 15, stating that he would pay the amounts due by October 29, 2002. These agreements contained the following language:
 {¶ 15} "Failure to follow this payment agreement could result in a license forfeiture, a warrant block preventing you from renewing your driver's license, or a warrant for your arrest. Failure to provide the court with current addresses at any time while this payment agreement is in effect may result in you being held in contempt of court."
 {¶ 16} Also on the agreements were statements that:
 {¶ 17} "It is THEREFORE, ORDERED, that the fine and cost owing on this case be paid accordingly, or if not paid in the manner agreed upon, defendant shall appear before this Court and show cause why he/she should not be held in Contempt of Court and/or why any portion of the Sentence which was suspended should not be imposed."
 {¶ 18} Both payment agreements (one for each violation) were also signed by the trial court judge. Each agreement contained a hand-written notation at the top, stating that: "Per Judge Piergies Pay in full by 10/29/02 or 30 jail days." The record does not reveal when these notations were written on the agreements or whether they were on the copy given to Self. To the extent any inference exists, however, it is that the notations were not on the agreements when they were file-stamped or when they may have been given to Self. Specifically, the handwriting on the agreements is in different colored ink than the file-stamp, and the writing on one agreement covers part of the file-stamped date. Accordingly, the Judge's note on at least one agreement was made after the clerk timestamped the document.
 {¶ 19} It is possible that the agreements with the notations were mailed to Self, but the record before us does not contain any information about when or if any documents in the file were mailed to the Defendant. In any event, Self again failed to pay the fines, and another bench warrant was filed on November 16, 2002. Subsequently, Self appeared at another hearing before a third judge on March 27, 2003. The court bailiff indicated at the hearing that Self had been picked up by the Sheriff's office on a warrant. However, the record does not indicate when that occurred, or how long Self had been in jail. During the hearing, Self stated that he was not trying to avoid paying, but that he had a child at home, and found it hard to pay bills and take care of her. At that point, the following exchange occurred:
 {¶ 20} "The Court: Well, we've had over a year. I can't make this go away. How about some community service.
 {¶ 21} "The Defendant: I (indiscernible) community service.
 {¶ 22} "The Court: Yeah, let me explain this to you, okay? Because I'm not going to let you shuck and jive me and then not show up. I promise you I will send you to jail for a long while if you don't follow through with this.
 {¶ 23} "The Defendant: (Indiscernible)
 {¶ 24} "The Court: I'm not trying to be hard. I just can't keep — I just can't keep playing with it, okay? Somebody out front will talk to you."
 {¶ 25} No entry was filed regarding this hearing, other than an entry that was file-stamped almost a year later, after Self had filed his notice of appeal. We will discuss that entry later.
 {¶ 26} The next document in the court file is from the Adult Probation Department and is labeled "Community Service Work." This document is not time-stamped, but has a hand-written notation on the top that says "4/29/03." Self's name is written on the document, and the document also says, "No Show."
 {¶ 27} Subsequently, on May 23, 2003, the trial court filed a document entitled "Show Cause Hearing." This document stated as follows:
 {¶ 28} "It appearing to the Court, KEVIN M. SELF, JR., Defendant, in the above captioned case/cases has failed to appear for community service work in lieu of fine and court costs.
 {¶ 29} "IT IS SO ORDERED that KEVIN M. SELF, JR., appear before this Court on Thursday, May 29, 2003 1:00 P.M. for a Show Cause Hearing to show why he/she should not be held in Contempt of Court pursuant to section 2705.02A of the Ohio Revised Code." (Bolding in original).
 {¶ 30} When Self failed to appear for this hearing, the court issued another bench warrant on June 6, 2003. At some later point, Self was arrested again, and came before the court for a hearing on February 3, 2004. This time, the original judge who had heard the case was on the bench, and the following discussion transpired:
 {¶ 31} "The Court: Sir, you are charged with failing to appear at a hearing for fines and costs. We had a show cause hearing on May 29th of 2003 and we sent you notice of that on some fines and court costs that go back to January of 2002.
 {¶ 32} "I'll refresh your recollection. Back on October 15th you indicated that you would be able to pay off your fines and court costs in full within two weeks or 30 days and that you worked at LL Construction. You promised me that one, so I let you out of jail on condition that you pay it off and you haven't done that. Do you remember that promise you made, sir?
 {¶ 33} "The Defendant: Yes, sir.
 {¶ 34} "The Court: Do you know what's coming?
 {¶ 35} "The Defendant: Sir?
 {¶ 36} "The Court: Do you know what's going to happen now?
 {¶ 37} "The Defendant: You gave me a few days of restitution time (indiscernible). I had got a sheriff's release and I was done here the whole weekend and you had gave me a restitution for three days. (Indiscernible) restitution somewhere down the line, and I went and did them. And I (indiscernible) and I did that.
 {¶ 38} "The Court: Hey, Kevin, you got me confused with somebody else because we never did that.
 {¶ 39} "The Defendant: (Indiscernible) I seen the probation officer and did that. (Indiscernible) I went to the front office and did three days of community service with a guy eight hours every day. I had did that.
 {¶ 40} "The Court: Sir, I didn't do that. I never did that to you and it's never been written down and there's no notice here of anyone ever doing that, so that — you got us mixed up with a different court.
 {¶ 41} "So I'll sentence you to 30 days, suspend the fines and court costs and close the case."
 {¶ 42} The court then filed a "sentencing entry" on February 3, 2004, ordering an "indirect sentence" and stating that the sentence was to be "30 days, of which 30 are statutorily mandated." The court also did not credit any days of time previously served toward the sentence.
 {¶ 43} On February 11, 2004, Self filed a motion for stay of execution pending appeal, but the trial court denied the motion the next day. Self then filed a notice of appeal on February 13, 2004, and asked that the record and transcript be forwarded to the court of appeals. On the same day, we granted a stay of execution pending appeal.
 {¶ 44} On March 5, 2004, the court filed several entries that were time-stamped as of that date. However, the entries were added to the trial court file and given docket numbers as if they had actually been filed as of the date a particular hearing occurred. These entries included: 1) an entry for Self's plea of no contest and finding of guilty on January 8, 2002 (Doc. #5); 2) the sentencing entry for April 30, 2002, where Self was sentenced on the DUS and red light violation (Doc. #10); 3) an entry regarding a show cause hearing on October 15, 2002, in which Self was ordered to "pay off all fines and costs within two weeks or 30 days jail imposed" (Doc. #16); and 4) an order regarding the court appearance on March 23, 2003, ordering Self to "set up community service in lieu of fines and costs owed" (Doc. #20). None of the entries was designated "nunc pro tunc." The docket and journal entries were then forwarded to our court, along with the transcripts of the hearings.
 {¶ 45} In responding to the motion for reconsideration, the State claims that the imposition of "community control" was mentioned in several contexts, including two entries that ordered Self to report for and set up community service. The State also contends that the contempt process was mentioned in numerous places throughout the trial court record. However, the fact that the trial court may have mentioned these items does not mean that the court complied with requirements for imposing contempt or community control sanctions.
 {¶ 46} As a preliminary point, we must distinguish between "community control" and "community service," which the State seems to use interchangeably. "Community control" is a term of art added to criminal statutes in recent years to replace probation and parole, meaning that a defendant stays in the community, under certain "controls," rather than being sent to prison. Until amendments to the criminal code in January, 2004, community control sanctions were not used in connection with misdemeanor crimes. However, effective January 1, 2004, the definition of community control was changed to include probation for misdemeanors. See, e.g., R.C. 2929.01(F), as amended by 2002 H.B. 490, effective January 1, 2004 (defining "community control" to include probation if the sentence in question was imposed for a misdemeanor committed before January 1, 2004).
 {¶ 47} In contrast, "community service" refers to work performed in a community, typically as a condition of probation (now community control), or in lieu of paying fines. For example, R.C. 2947.23(A)(1)(a), as amended effective March 23, 2003, allows courts to order community service in lieu of payment of fines, where defendants fail to pay judgments or make timely payments toward judgments under court-approved payment schedules. Consequently, "community service" is not the equivalent of "community control" and should not be used interchangeably.
 {¶ 48} Putting the idea of community control aside for a moment, we note that trial courts "do not have inherent power to suspend execution of a sentence in a criminal case and may order such suspension only as authorized by statute." State v. Smith (1989), 42 Ohio St.3d 60,537 N.E.2d 198, paragraph one of the syllabus, approving and followingMunicipal Court v. State ex rel. Platter (1933), 126 Ohio St. 103,184 N.E. 1, paragraph three of the syllabus. The controlling statute at the time of Self's original sentence was R.C. 2929.51, which provided, in pertinent part, that:
 {¶ 49} "[a]t the time of sentencing and after sentencing, when imprisonment is imposed for a misdemeanor, the court may do any of the following:
 {¶ 50} "(1) Suspend the sentence and place the offender on probation pursuant to section 2951.02 of the Revised Code;
 {¶ 51} "(2) Suspend the sentence pursuant to section 2951.02 of the Revised Code upon any terms that the court considers appropriate * * *." R.C. 2951.02(A)(1) and (2) (1996 S. 223).
 {¶ 52} At the time Self was sentenced, R.C. 2951.02 outlined various factors for courts to consider in deciding whether to suspend a misdemeanor sentence, including the risk to the public in releasing the individual, whether the defendant is a repeat offender, and so forth. See R.C. 2951.02(A)(1) and (2). The trial court did not discuss these factors, and did not impose probation, as the term was not even mentioned. Instead, the court appears to have suspended the sentence under R.C. 2929.51(A)(2), which allows the court to suspend a sentence on any conditions the court considers appropriate. The trial court did not expressly connect any terms to the suspension. To the contrary, the court simply suspended the sentence and ordered Self to pay fines and costs. Therefore, the most that could be inferred is that payment may have been a condition of suspension.
 {¶ 53} Based on the above review of the record, we agree with Self that our prior opinion was incorrect. Contrary to what we said in our opinion, the transcript of the final hearing indicates that the trial court did not sentence Self to thirty days in jail for violation of community control sanctions or for failure to perform community service. Instead, the trial court indicated that the sentence was for nonpayment of fines. In fact, when Self claimed that he had performed community service in lieu of payment, the trial court emphatically denied ever giving Self that option.
 {¶ 54} As a further matter, we were also incorrect when we said that the trial court had imposed sentence for repeated contempt of court orders. Self, 2002-Ohio-310, at ¶ 16. The record is devoid of any properly conducted contempt proceedings. We were additionally incorrect when we referred to R.C. 2929.25(A)(1) and R.C. 2929.27(A)(3) as authority for the court's imposition of community service as a condition of "community control sanctions." Self, 2005-Ohio-310, at ¶ 13. Both of these sections, as pertaining to misdemeanor sentencing, did not come into existence until January 1, 2004, well after the time Self was originally sentenced. See 2002 H. 490, effective January 1, 2004. And, finally, we have already noted that the term "community control sanctions" did not include misdemeanors until January 1, 2004.
 {¶ 55} Even though R.C. 2929.25 and R.C. 2929.27 were not available, the trial court did have several options when Self failed to pay. For example, the court could have either revoked the suspension or initiated contempt proceedings. However, the court did neither. Under Crim. R. 32.3, courts may not impose a prison term for violations of community control sanctions, nor may it revoke probation except after a hearing at which the defendant is present and is apprised of the grounds for the revocation. In addition, the defendant has the right to be represented by counsel and must be advised of that fact. Crim. R. 32.3(B).
 {¶ 56} Although Self was not technically on "probation," revoking the suspended sentence had the same effect as revoking probation, because Self was then subject to being imprisoned, just as a probationer is subject to being imprisoned for a probation violation. Despite this fact, Self was not informed at any point of his right to be represented by counsel. Therefore, if what the trial court intended to do was to revoke the suspended sentence, it failed to comply with legal requirements. Compare State v. Kling, Stark App. No. 2002CA00433, 2003-Ohio-2127, at ¶ s 6 and 24 (trial court violated due process by failing to inform defendant of right to counsel and to an evidentiary hearing when defendant's suspended sentence for driving under the influence was revoked at show cause hearing).
 {¶ 57} The trial court could also have cited and punished Self for contempt. Under R.C. 2705.02, "[a] person guilty of any of the following acts may be punished as for a contempt:
 {¶ 58} (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer * * *." Failure to obey a court order is considered indirect contempt. State v. Shoup
(Apr. 15, 1988), Wood App. No. WD-87-48, 1988 WL 37585, *1. In such situations, "[c]onstitutional due process requires that one charged with contempt of court be advised of the charge against him, have an opportunity to present a defense or explanation, have the right to call witnesses on his behalf, and know of his or her right to counsel." Id. at *2. See, also, State v. Belcastro (2000), 139 Ohio App.3d 498, 501,744 N.E.2d 271, and In re Contempt Citation of Lewis (Mar. 31, 1999), Greene App. 98CA29, *2. Again, however, the trial court did not comply with these requirements. At no time was Self told that he had a right to present a defense, to call witnesses, or to be represented by counsel.
 {¶ 59} As we mentioned before, one of the hearings was held on March 27, 2003. At that point, R.C. 2947.23 had been amended, effective March 23, 2003, to allow for hearings on a defendant's failure to pay a judgment for court costs. In this regard, the amended statute provided that:
 {¶ 60} "[i]f a judge or magistrate has reason to believe that a defendant has failed to pay the judgment described in division (A) of this section or has failed to timely make payments towards that judgment under a payment schedule approved by the judge or magistrate, the judge or magistrate shall hold a hearing to determine whether to order the offender to perform community service for that failure. The judge or magistrate shall notify both the defendant and the prosecuting attorney of the place, time, and date of the hearing and shall give each an opportunity to present evidence. If, after the hearing, the judge or magistrate determines that the defendant has failed to pay the judgment or to timely make payments under the payment schedule and that imposition of community service for the failure is appropriate, the judge or magistrate may order the offender to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the judge or magistrate is satisfied that the offender is in compliance with the approved payment schedule. If the judge or magistrate orders the defendant to perform community service under this division, the defendant shall receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed shall reduce the judgment by that amount. Except for the credit and reduction provided in this division, ordering an offender to perform community service under this division does not lessen the amount of the judgment and does not preclude the state from taking any other action to execute the judgment." R.C. 2947.23(B).
 {¶ 61} Again, the court did not comply with this statute. No notice was issued to the prosecutor and defendant, and the court did not give Self an opportunity to present evidence. In addition, the court never entered an order regarding this hearing until March 5, 2004, i.e., after Self filed his notice of appeal. Even then, the court failed to make its orders nunc pro tunc. Under the law, courts of record speak only through their journal entries. State ex rel. Fogle v. Steiner, 74 Ohio St.3d 158,163, 656 N.E.2d 1288, 1995-Ohio-278. As a result, even if we could somehow overlook the other failures to comply with R.C. 2947.23, there is simply no legitimate journal entry from March 27, 2003, ordering Self to perform community service.
 {¶ 62} In view of the preceding discussion, we conclude that the motion for reconsideration has merit and should be granted. Accordingly, the appeal is reinstated and our opinion of January 28, 2005 is hereby vacated.
 II {¶ 63} Turning now to the merits of the underlying case, Self raised two assignments of error in his brief. The first was that the trial court erred in failing to separate court costs from fines, and by jailing Self for non-payment of court costs. As a second assignment of error, Self contends that the trial court erred by failing to follow R.C. 2947.14
when it ordered Self to serve a term of incarceration for non-payment of a fine.
 {¶ 64} In the present case, the court did combine court costs and fines. To the extent that Self was imprisoned for non-payment of the costs as well as fines, it was error. Specifically, the Ohio Supreme Court has held that courts may not confine defendants to work off court costs in order to satisfy the government's contractual interest. See,e.g., Strattman v. Studt (1969), 20 Ohio St.2d 95, 103, 253 N.E.2d 749, paragraphs six and seven of the syllabus.
 {¶ 65} Both the State and Self agree that Strattman prohibits imprisonment of defendants for non-payment of court costs. The State argues, however, as it did in connection with the motion for reconsideration, that Self was imprisoned for failure to comply with "community control sanctions" and for contempt. For the reasons previously mentioned, we disagree. Without in any way condoning the actions of a defendant who fails to pay fines as ordered, the fact is that the trial court did not follow legal requirements in dealing with the matter. Accordingly, the first assignment of error has merit and is sustained.
 II {¶ 66} In the second assignment of error, Self contends that the trial court should have relied on the procedures in R.C. 2947.14 when it ordered incarceration in lieu of payment of a fine. R.C. 2947.14 states in pertinent part that:
 {¶ 67} "(A) If a fine is imposed as a sentence or a part of a sentence, the court or magistrate that imposed the fine may order that the offender be committed to the jail or workhouse until the fine is paid or secured to be paid, or the offender is otherwise legally discharged, if the court or magistrate determines at a hearing that the offender is able, at that time, to pay the fine but refuses to do so. The hearing required by this section shall be conducted at the time of sentencing.
 {¶ 68} "(B) At the hearing, the offender has the right to be represented by counsel and to testify and present evidence as to the offender's ability to pay the fine. If a court or magistrate determines after considering the evidence presented by an offender, that the offender is able to pay a fine, the determination shall be supported by findings of fact set forth in a judgment entry that indicate the offender's income, assets, and debts, as presented by the offender, and the offender's ability to pay.
 {¶ 69} "(C) If the court or magistrate has found the offender able to pay a fine at a hearing conducted in compliance with divisions (A) and (B) of this section, and the offender fails to pay the fine, a warrant may be issued for the arrest of the offender. Any offender held in custody pursuant to such an arrest shall be entitled to a hearing on the first regularly scheduled court day following the date of arrest in order to inform the court or magistrate of any change of circumstances that has occurred since the time of sentencing and that affects the offender's ability to pay the fine. The right to the hearing on any change of circumstances may be waived by the offender.
 {¶ 70} "At the hearing to determine any change of circumstances, the offender has the right to testify and present evidence as to any portion of the offender's income, assets, or debts that has changed in such a manner as to affect the offender's ability to pay the fine. If a court or magistrate determines, after considering any evidence presented by the offender, that the offender remains able to pay the fine, that determination shall be supported by a judgment entry that includes findings of fact upon which such a determination is based.
 {¶ 71} "(D) No person shall be ordered to be committed to a jail or workhouse or otherwise be held in custody in satisfaction of a fine imposed as the whole or a part of a sentence except as provided in this section. Any person imprisoned pursuant to this section shall receive credit upon the fine at the rate of fifty dollars per day or fraction of a day. If the unpaid fine is less than fifty dollars, the person shall be imprisoned one day."
 {¶ 72} "By requiring a hearing prior to incarceration for nonpayment of fines, R.C. 2947.14(A) protects the right of a criminal defendant not to be imprisoned for nonpayment of a fine due to indigency. * * * An offender may be incarcerated for his unwillingness to pay a fine, but not, consistent with the constitutional principles of due process and equal protection, for his inability to pay." State v. Meyer (1997),124 Ohio App.3d 373, 376-377, 706 N.E.2d 378 (citations omitted).
 {¶ 73} Moreover, while the statute says that the hearing "must be held `at the time of sentencing,' Ohio's courts have read R.C. 2947.14 in its entirety and concluded that the hearing requirement `does not arise until the trial court decides to incarcerate the offender for failure to pay.'"State v. Perkins, 154 Ohio App.3d 631, 798 N.E.2d 646, 2003-Ohio-5092, at ¶ 26, quoting from Meyer, 124 Ohio App.3d at 375. Again, the trial court did not comply with the requirements of R.C. 2947.14, as it did not inform Self of the right to counsel, did not take evidence on Self's ability to pay, and made no findings about credit Self would receive for time served. In this latter regard, counsel for Self points out that he has been incarcerated eight days already, meaning that the total amount of his fines would have been paid (based on a rate of $50 per day). We express no opinion in this regard, as the record does not clearly indicate how many days Self has been in jail.
 {¶ 74} As we pointed out, the trial court had several options in the present case. The court could have revoked Self's suspended sentence by following the procedures in Crim. R. 32.3. It could also have held Self in contempt of court by complying with the legal requirements for contempt. Another alternative was to correctly impose community service under R.C. 2947.23. An additional choice would have been to incarcerate Self, for non-payment of fines only, after a hearing conducted in accordance with R.C. 2947.14. However, the trial court failed to comply with legal requirements for any of these options. As we said, we certainly do not condone a defendant's failure to pay fines or comply with court orders. Nonetheless, courts should follow the procedures mandated by the law.
 {¶ 75} Based on the preceding discussion, the motion for reconsideration is granted. Our prior judgment of January 28, 2005 is hereby vacated, and the appeal is reinstated. Further, both assignments of error in the appeal are sustained. Accordingly, the judgment of the trial court is reversed, and this case is remanded for further proceedings.
 {¶ 76} It is so ordered.
JAMES A. BROGAN, Presiding and Administrative Judge.
THOMAS J. GRADY, Judge.
MARY E. DONOVAN, Judge.