[Cite as *State v. Jones*, 2016-Ohio-5728.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26819 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2014-CR-1402 |
| v. | : | |
| | : | (Criminal Appeal from |
| DWAYNE JONES | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 9th day of September, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

ROBERT L. SCOTT, Atty. Reg. No. 0086785, 8801 North Main Street, Suite 200, Dayton, Ohio 45415
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Dwayne Jones appeals from his conviction and

sentence for Felonious Assault. Jones argues that the trial court erroneously overruled an objection, based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the State's peremptory challenge to a prospective juror, and that his conviction is against the manifest weight of the evidence. We conclude that the trial court did not err in overruling the *Batson* objection, and that the judgment is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.

## I. Traffic Stop Leads to Assault on an Officer

{¶ 2} In April 2014, two City of Dayton police officers were on patrol in a marked cruiser on Broadway Street in the City of Dayton. Responding to a tip regarding a Chrysler 300, registered to Ambrea Carter, the officers saw the car and followed it to the parking lot of Church's Chicken. They observed Jones turn the car into the parking lot from Broadway Street without using a turn signal, then drive into the parking lot and back into a parking spot. The officers parked their cruiser near the Chrysler, and Officer Rillo proceeded to get out of the passenger side of the police cruiser and walk toward the Chrysler. Within seconds, Jones accelerated the Chrysler directly toward the officer, who had to jump out of the way to avoid being injured. As Jones drove the Chrysler out of the parking lot, his vehicle struck a van in the parking lot, knocking off the side mirror of the Chrysler. The officers did not pursue the Chrysler at that time. At the time of the incident, Officer Rillo saw the driver, Jones, clearly enough to positively identify him at trial.

{¶ 3} A few days after the incident, a search warrant was obtained, and the Chrysler, with a missing side mirror, was found and searched, linking it to Jones.

## II. The Course of Proceedings

{¶ 4} Jones was indicted on one count of Felonious Assault, with a Deadly Weapon, upon a Police Officer, in violation of R.C. 2903.11(A)(2), a felony of the first degree.

{¶ 5} The case proceeded to a jury trial. During voir dire, questions were asked to the jury pool whether any prospective juror knew anyone who had been convicted of a crime. Four prospective jurors responded affirmatively regarding convictions of family members. Three of the four jurors discussed the convictions openly and agreed that it would not impact their ability to be fair and impartial. The fourth prospective juror asked for a sidebar conference to discuss it privately. The prospective juror advised the court and the attorneys that his son was a convicted sex offender. When asked if it would impact his ability to be fair and impartial, the prospective juror replied, "To be honest with you, the case was such a rocky situation. He was prosecuted but I feel like he shouldn't have been." Trial Transcript at pg. 60. Several of this prospective juror's comments and answers were labeled "indiscernible" for the record. *Id.* at 60-61. When asked again if he could be fair and impartial, the prospective juror answered, "Yeah." *Id.* at 61. After this prospective juror was seated as an alternate, the trial court allowed the State to exercise a peremptory challenge to have him excused. Defense counsel objected to the peremptory challenge, but the reason for the objection is not explained. *Id.* at 100-101. Without specifically addressing the racial composition content of the jury pool or the jurors already selected or already excused, it appears that the trial court presumed that the defense was making a *Batson* challenge, and asked the State to explain its "reason for

knocking him out." *Id.* at 101. The State responded, "I believe he indicated at sidebar that his son was convicted of a sex offense. And he felt that there wasn't enough evidence for that. And therefore, he would want to see a significant amount of evidence to convict someone. He was asked whether or not he'd be fair and impartial and he said yes. But he did indicate that based on what happened to his son that he felt his son was convicted upon insufficient evidence (indiscernible). And therefore, I think he would have a bias toward the State * * * ." Defense counsel responded that this prospective juror had affirmatively agreed that he could be fair and impartial, and would not have a bias against the government. The trial court overruled the objection, and the prospective juror was excused.

{¶ 6} The jury found Jones guilty of the Felonious Assault charge. Jones was sentenced to a term of 8 years of imprisonment, to run concurrently with sentences in four other cases. From the judgment of the trial court, Jones appeals.

### III. Standard of Review

{¶ 7} The Supreme Court of Ohio has addressed the appropriate standard of review for a claim of racial discrimination in jury selection, as follows:

> Review of a *Batson* claim largely hinges on issues of credibility. Accordingly, we ordinarily defer to the findings of the trial court. See *Batson [v. Kentucky*, 476 U.S. 79,] at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 89, fn. 21 [1986]. Whether a party intended to racially discriminate in challenging potential jurors is a question of fact, and in the absence of clear error, we will not reverse the trial court's determination.

*Hicks v. Westinghouse Materials Co.,* 78 Ohio St.3d 95, 102, 676 N.E.2d 872 (1997), citing *Hernandez v. New York,* 500 U.S. 352, 369, 111 S.Ct.1859, 114 L.Ed.2d 395 (1991); *State v. Hernandez,* 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992).

{¶ 8}  When reviewing an argument that the trial court should not have accepted the grounds for the peremptory challenge, "[t]he finding of the trial court, because it turns largely on the evaluation of credibility, is entitled to deference on appeal and will not be reversed unless clearly erroneous. " *State v. Herring*, 94 Ohio St.3d 246, 257, 762 N.E.2d 940 (2002),


**IV.   The Trial Court Did Not Err in Overruling Jones's *Batson* Objection to the State's Peremptory Challenge to a Prospective Juror**

{¶ 9}  For his First Assignment of Error, Jones asserts:

THE TRIAL COURT ERRED IN PERMITTING THE STATE TO EXERCISE A PEREMPTORY CHALLENGE IN A RACIALLY DISCRIMINATORY MANNER.

{¶ 10}  Jones argues that the trial court erred by overruling his *Batson* challenge and allowing the State to exercise a peremptory challenge to excuse a juror. In *Hicks, supra,* the Supreme Court of Ohio set forth the analysis used in determining whether a peremptory challenge is racially motivated. The court held:

The United States Supreme Court set forth in *Batson [v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),] the test to be used in determining whether a peremptory strike is racially motivated. First, a party

opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. *Id.* at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently "discriminating" device, permitting " ' "those to discriminate who are of a mind to discriminate." ' "  *State v. Hernandez* (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313, certiorari denied (1992), 506 U.S. 898, 113 S.Ct. 279, 121 L.Ed.2d 206. The litigant must then show an inference or inferences of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority members is present. *See Batson* at 96-97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation "related to the particular case to be tried." *Id.* at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation "need not rise to the level justifying exercise of a challenge for cause." *Id.* at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. The critical issue is whether discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if

the explanation is merely a pretext for exclusion on the basis of race. *Hernandez v. New York* (1991), 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 408.

Last, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. *Purkett v. Elem* (1995), 514 U.S. 765, 766-767, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834, 839. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. *Id.* at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed. *Hernandez v. New York,* 500 U.S. at 365, 111 S.Ct. at 1869, 114 L.Ed.2d at 409.

*Hicks*, *supra*, at 98-99.

{¶ 11} In the case before us, the record of the juror's statements is complicated by at least five "indiscernible" comments, but it does confirm that the juror had a life experience different from the other three prospective jurors, who also had relatives who had been convicted of a crime. Although the three-step process of handling a *Batson* challenge was not clearly placed on the record, the record does support the trial court's finding that the State provided a race-neutral reason for the exclusion of the alternate juror. The record does not contain facts requiring a conclusion that the State's challenge was purposeful discrimination, or that the race-neutral reason given was not the actual reason. The trial court's acceptance of the State's proffered race-neutral grounds for its preemptory challenge is not clearly erroneous.

{¶ 12} Jones's First Assignment of Error is Overruled.

**V. The Conviction Is Not Against the Manifest Weight of the Evidence**

{¶ 13} For his Second Assignment of Error, Jones asserts:

DEFENDANT'S CONVICTION FOR THE OFFENSE OF FELONIOUS ASSAULT (DEADLY WEAPON)(PO), IN VIOLATION OF ORC 2903.11(A)(2) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE OVERTURNED

{¶ 14} Jones argues that the State failed to prove the mens rea required for a conviction for Felonious Assault. To obtain a conviction for Felonious Assault, the jury was required to find, beyond a reasonable doubt, that Jones knowingly caused, or attempted to cause, serious physical harm to another by means of a deadly weapon or dangerous ordnance. R.C. 2903.11(A)(2). The State did establish that Jones was driving a motor vehicle at the time of the offense. We have held that "[a]n automobile used in an attempt to run down a police officer constitutes a deadly weapon." *State v. McDaniel*, 2d Dist. Montgomery No. 16221, 1998 WL 214606, *8 (May 1, 1998); *State v. Moreland*, 2d Dist. Greene No. 2001CA85, 2003-Ohio-210, ¶ 21.

{¶ 15} Jones did not testify, and the only evidence before the jury is the testimony of the officers who were eyewitnesses to the incident. The officers' testimony establishes that Officer Rillo's safety was threatened by Jones when Jones drove the Chrysler directly toward Officer Rillo, in a manner that would have harmed Officer Rillo if he had not been able to respond quickly by jumping out of the way.

{¶ 16} When a defendant does not testify, the jury or fact finder "must decide what his intent is by looking at the surrounding facts and circumstances." *State v. Terry*, 186

Ohio App.3d 670, 2010-Ohio-1604, 929 N.E.2d 1111, ¶¶ 22-23 (4th Dist.). R.C. 2901.22(B), defining the culpable mental state of knowledge, provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

**{¶ 17}** "[A] person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Mulligan,* 2d Dist. Montgomery No. 19359, 2003-Ohio-782, ¶ 35, citing *In re Purola,* 73 Ohio App.3d 306, 312, 596 N.E.2d 1140 (1991). *See also State v. Perkins*, 154 Ohio App.3d 631, 2003-Ohio-5092, 798 N.E.2d 646, ¶ 42 (2d Dist.) In the case before us, the facts support a conclusion that Jones was voluntarily driving the vehicle, and was aware that his conduct could have caused serious harm to a police officer. Based on the evidence, we conclude that the verdict of guilty on the Felonious Assault charge is not against the manifest weight of the evidence.

**{¶ 18}** Jones's Second Assignment of Error is overruled.

## VI. Conclusion

**{¶ 19}** Both of Jones's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

DONOVAN, P.J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michele D. Phipps
Robert Scott

Hon. Steven K. Dankof