OPINION
{¶ 1} Kenneth C. Meade appeals from a judgment of the Municipal Court of Darke County, which imposed a previously-suspended eighty-seven day jail sentence due to Meade's alleged failure to comply with the recommendations of Darke County Recovery Services ("DCRS"). For the following reasons, the judgment will be reversed and the case remanded for further proceedings. *Page 2 
 {¶ 2} In April 2006, Meade pled no contest to driving under the influence of drugs or alcohol, in violation of R.C. 4511.19(A)(1). In return, the state dismissed charges of driving with a prohibited blood alcohol concentration and speeding. The trial court found Meade guilty of driving under the influence of drugs or alcohol, and it sentenced him to ninety days in jail, with eighty-seven days suspended on the condition that Meade have no similar violations for one year and that he pay a $600 fine and court costs. The court also imposed a 180-day driver's license suspension with limited occupational driving privileges, and it ordered Meade to report to DCRS by May 31, 2006 for an evaluation and to comply with any recommendations.
 {¶ 3} Meade completed an evaluation with DCRS on May 22, 2006. On June 1, 2006, DCRS informed the court that it recommended residential treatment due to Meade's chronic alcohol use and because he had failed to maintain sobriety despite numerous outpatient, intensive outpatient, and short term inpatient treatments. Later that month, DCRS informed the court that Meade was unwilling to discuss long-term residential treatment options, because "[h]e has a job and a daughter to take care of and cannot afford, according to him, to be away from either."
 {¶ 4} The court ordered a hearing for July 6, 2006. At that hearing, the prosecutor indicated that the state would not benefit if Meade were ordered into inpatient treatment but he lost his employment. The prosecutor stated that DCRS was looking into a longer-term counseling program through a halfway house in Troy. The court scheduled a status hearing for July 27, 2006.
 {¶ 5} On July 26, 2006, DCRS sent the court correspondence, which elaborated on Meade's prior treatment through the agency in 1994, 1997, 1998, and 2002 and notified the *Page 3 
court of the requirements for the William E. Kessler Men's Recovery Home ("Kessler House") in Troy. The record does not contain a transcript of the proceedings on July 27, 2006. However, DCRS wrote to the court in response to the hearing that, if Mr. Meade were granted a three month or less stay at Kessler House, DCRS recommended that he return to the agency for Aftercare, including an intensive outpatient program and two 12-step meetings per week.
 {¶ 6} Another status hearing was apparently scheduled for August 3, 2006. The court's entry of that date states that DRCS, the prosecutor and defense counsel had a joint recommendation and "trace for committment [sic] 9.7.06." The record does not contain transcripts of the August or September 2006 hearings.
 {¶ 7} On September 21, 2006, the court scheduled a show cause hearing for October 4, 2006. At that hearing, Meade's counsel indicated that they were continuing to look into programs, but many were cost-prohibitive and they were looking for a program that insurance would cover. The court ordered Meade to report to Kessler House (which would take insurance) to get on its waiting list. The court ordered another show cause hearing in ninety days.
 {¶ 8} At the February 15, 2007 show cause hearing, Meade's attorney informed the court that Meade had contacted Kessler House and that he was on the waiting list. The court ordered Meade to provide proof that he was on the waiting list by the next day. Meade's counsel submitted a letter from David Hottle, Coordinator of Kessler House, dated February 16, 2007, which indicated that Meade had twice contacted Kessler House about being placed on the waiting list — the first time was "some time ago" and the second time was the previous day. However, Hottle further indicated that he did not believe that Meade would be a "proper fit for the Men's Home" because it appeared that he wanted to be on the waiting list in order to please *Page 4 
the court.
 {¶ 9} On February 20, the trial court filed an entry indicating that Meade was not on Kessler House's waiting list. It found that Meade had "purposefully delayed compliance with, and blatantly disregarded, previous Orders" and it re-imposed the previously-suspended eighty-seven day jail sentence for Meade's failure to comply with the recommendations of DCRS. We stayed Meade's sentence pending appeal.
 {¶ 10} Meade raises two assignments of error.
 {¶ 11} I. "THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN FINDING THAT APPELLANT VIOLATED A PRIOR COURT ORDER AND IMPOSING SENTENCE THEREFOR."
 {¶ 12} In his first assignment of error, Meade claims that the trial court erred in imposing the previously-suspended eighty-seven day j ail sentence when the requirement that he obtain an evaluation from DCRS and comply with its recommendations was not a condition of the suspension. The state responds that Meade's counsel drafted the court's April 20 judgment entry, and that all parties understood that substance abuse treatment was a condition of his suspended sentence.
 {¶ 13} The relevant portions of the April 20, 2006 judgment entry are as follows:
 {¶ 14} "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Defendant shall be sentenced to a term of ninety (90) days in the Darke County Jail, with eighty-seven (87) days of said sentence to be suspended on the condition that the Defendant have no similar violations for a period of one (1) year and pay the fine and Court costs as agreed upon; that the Defendant shall pay a fine of Six Hundred and NO/100 ($600.00) Dollars plus costs in *Page 5 
this matter, which fine shall be paid in full within one hundred eighty (180) days from the date of filing of this Entry. The Defendant shall [have] the right to serve his remaining three (3) days in a Weekend Intervention Program.
 {¶ 15} "IT IS FURTHER ORDERED that the Defendant's driver's license shall be suspended for a period of one hundred eighty (180) days, effective February 1, 2006, with the Defendant to have occupational driving privileges to, from and during his place of employment with Cal-Maine Foods, New Madison, Ohio.
 {¶ 16} "* * *
 {¶ 17} "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant shall report to Darke Co. Recovery for an evaluation by 5.31.06 and comply with any recommendations therefrom."
 {¶ 18} Upon review of the judgment entry, Meade's interpretation of the court's judgment is correct. A plain reading of the entry indicates that eighty-seven days of the jail sentence were suspended on the condition that he have no violations within one year and that he pay the fine and court costs. Although the court required Meade to obtain an evaluation from DCRS and to follow its recommendations, the suspended sentence was not contingent upon his completion of that requirement. Accordingly, the trial court erred in imposing the previously-suspended sentence for Meade's alleged failure to comply with the DCRS evaluation requirement.
 {¶ 19} Although the court could not impose its suspended sentence based on a requirement that was not a condition of the suspension, we have stated that indirect contempt proceedings, if conducted properly, might be appropriate to address a failure to comply with the *Page 6 
terms of a sentence. State v. Daugherty, 165 Ohio App.3d 115,2006-Ohio-240, ¶ 7 (addressing the trial court's finding of contempt for defendant's failure to perform community service as required by his sentence for a fourth-degree misdemeanor driver's license violation), citing State v. Self, Montgomery App. No. 20370, 2005-Ohio-1120. Thus, while the court may not have been able to revoke the suspension of his sentence, the court may have been able to enforce its order through contempt proceedings. As discussed, infra, however, the record reflects that the court did not conduct a proper contempt proceeding.
 {¶ 20} The first assignment of error is sustained.
 {¶ 21} II. "THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN FINDING THAT APPELLANT VIOLATED THE TERMS AND CONDITIONS OF HIS ORIGINAL SENTENCE WITHOUT PROVIDING THE APPELLANT WITH NOTICE OF THE ALLEGED VIOLATIONS OR AN OPPORTUNITY TO BE HEARD IN DEFENSE THEREOF."
 {¶ 22} In his second assignment of error, Meade states that the trial court failed to comply with the due process requirements for imposing a previously-suspended sentence. He analogizes the imposition of a suspended sentence with the revocation of probation or community control, which requires a defendant to receive written notice of the claimed violation, discovery of evidence, the opportunity to be heard and to present witnesses and documentary evidence on his behalf, the right to confront and cross-examine witnesses, a neutral and detached decision-maker, and written findings as to the evidence relied upon to revoke probation. Gagnon v. Scarpelli (1973), 411 U.S. 778,93 S.Ct. 1756, 36 L.E.2d 656; State v. Miller (1975), 42 Ohio St.2d 102, 104, 326
N.E.2d 259. *Page 7 
 {¶ 23} In response, the state argues that the show cause hearings in this case were similar to community control revocation hearings held in the common pleas court for felony probation violations. The state asserts that Meade was put on notice of the violations by written notices of DCRS to the court and the parties, which indicated that Meade had not complied with the court's sentencing order. The state further asserts that Meade "was verbally advised of his violations in the four prior hearings" and that he was "fully aware that his noncompliance with the trial court's order could and would result in the reimposition of the 87 day suspended jail term."
 {¶ 24} Because the DCRS requirement was not a condition of Meade's suspended sentence, we need not decide whether the court provided adequate notice and an opportunity to be heard when it imposed the suspended sentence. However, as the court could have proceeded under indirect contempt, we will address his due process argument in that context.
 {¶ 25} Meade should have also been granted procedural safeguards if the matter were treated as indirect contempt. In indirect contempt cases, "constitutional due process requires that a defendant charged with contempt * * * be advised of the charges against him, have a reasonable opportunity to meet those charges by way of a defense or explanation, have the right to be represented by counsel, and have an opportunity to testify and call other witnesses in his behalf."Pirtle v. Pirtle, Montgomery App. No. 18613, 2001-Ohio-1539; see also R.C. 2705.03 and R.C. 2705.05. Where the accusing judge is "too embroiled in the controversy to act as a neutral and detached fact finder," the contempt charge should be referred to another judge.State v. Dean, Clark App. Nos. 06-CA-61, 06-CA-63, 2007-Ohio-1031.
 {¶ 26} Upon review of the record, we agree with Meade that he was not provided the *Page 8 
required notice and opportunity to be heard. There is no evidence that Meade was informed that the purpose of the February 2007 hearing — or any prior hearing — was to determine whether Meade should be punished for failure to comply with the DCRS evaluation requirement. The written notice for the February 2007 hearing merely stated that Meade was required to attend a "show cause hearing." This hearing had been set as a follow-up to the October 6, 2006 hearing. Although Meade knew that the purpose of the hearing was to discuss whether he had been placed on the Kessler House waiting list, the notice was insufficient to inform him that a jail sentence or other sanction might be imposed.
 {¶ 27} The hearing itself consisted of a conversation between the court, counsel, and a representative of DCRS. No individuals testified and no documentary evidence was presented. Meade's counsel, based on discussions with his client, represented to the court that Meade had complied with the court's October 6 order. The hearing ended with the court ordering Meade's counsel to file proof that Meade was on the Kessler House waiting list by the end of the next day. The court's basis for imposing the suspended sentence was Hottle's letter, which was submitted to the court by Meade's counsel on February 16. Meade had no opportunity to present testimony or other evidence to refute the substance of that letter.
 {¶ 28} In our view, even if the court could have reasonably concluded, as it did, that Meade had "purposefully delayed compliance with, and blatantly disregarded, previous Orders," the trial court should have provided notice to Meade to show cause why he should not be found to have violated the court's orders in light of Hottle's letter. Moreover, Meade should have been given an opportunity to present evidence in response to Hottle's statements. The court's imposition of the jail sentence based on a copy of correspondence filed with the court, without *Page 9 
another hearing, did not satisfy the procedural safeguards to which Meade was entitled.
 {¶ 29} The second assignment of error is sustained.
 {¶ 30} The judgment of the trial court will be reversed, and the matter remanded for further proceedings.
 FAIN, J. and GRADY, J., concur. *Page 1