[Cite as *State v. Dumas*, 2011-Ohio-1003.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 10-MA-50 |
| | ) | |
| NATHANIEL DUMAS, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:         Criminal Appeal from Youngstown
                                  Municipal Court of Mahoning County,
                                  Ohio
                                  Case No. 09CR2794

JUDGMENT:                         Affirmed in part,
                                  Reversed and remanded in part

APPEARANCES:
For Plaintiff-Appellee            Jay Macejko
                                  City Prosecutor
                                  Bassil Ally
                                  Assistant City Prosecutor
                                  City of Youngstown
                                  26 S. Phelps St.
                                  Youngstown, Ohio 44503

For Defendant-Appellant           Attorney Pete C. Klimis
                                  Attorney James E. Lanzo
                                  4126 Youngstown-Poland Road
                                  Youngstown, Ohio 44514

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

                                  Dated: February 28, 2011

DONOFRIO, J.

{¶1} Defendant-appellant, Nathaniel Dumas, appeals from a Youngstown Municipal Court judgment convicting him of misdemeanor assault following a bench trial and finding him in contempt for his behavior during trial.

{¶2} On November 23, 2009, a complaint was filed against appellant charging him with assault, a first-degree misdemeanor in violation of R.C. 2903.13(A). The charge stemmed from allegations by his ex-girlfriend that appellant showed up at her house, chased her, and repeatedly punched her.

{¶3} Appellant appeared for two pre-trials without counsel. Each time the court continued the matter. The court subsequently appointed counsel for appellant.

{¶4} The case was called for trial on February 17, 2009. At that time, appellant's counsel asked the court for a continuance. He stated that appellant had just disclosed two witnesses to him. (Tr. 3). Appellant then stated that he wanted a jury trial. (Tr. 3). The court denied these requests because they were not made prior to the trial date. (Tr. 3). Appellant next stated, "I want a new attorney." (Tr. 3). The following colloquy then took place:

{¶5} "THE COURT: What you want is irrelevant to me. You don't get to control things, Mr. Dumas. You have a lawyer.

{¶6} "MR. DUMAS: You're all going to do what you want to do anyway.

{¶7} "THE COURT: Don't interrupt me because I will find you in contempt. You are scheduled for trial today. You knew you were scheduled for trial today. We are having a trial today. You don't get to come in here and interrupt me.

{¶8} "MR. DUMAS: You're not God.

{¶9} "THE COURT: All right, Mr. Dumas, now you have 60 more days in jail for contempt. Have a seat at counsel table, sir. We are having a trial. Like I said, what you want and what you are going to get is two different things. If you interrupt me one more time and announce what you want one more time - -

{¶10} "MR. DUMAS: You're not God.

{¶11} "THE COURT: Now you have six months in jail.

**{¶12}** "(Mr. Dumas is now talking at the same time as * * * [the court] and it is inaudible.)

**{¶13}** "THE COURT:  Now, you have six months in jail.  You are either going to shut up and sit down or you are going to get a year in jail.  The choice is totally yours, Mr. Dumas.  You do not run me.

**{¶14}** "MR. DUMAS:  You are not God.

**{¶15}** "THE COURT:  Have a seat at counsel table, Mr. Dumas."  (Tr. 4-5).

**{¶16}** The trial then began.  Plaintiff-appellee, the State of Ohio, called the alleged victim as its first witness.  She testified that appellant came to her house and assaulted her.  (Tr. 7-8).  At this point, appellant interrupted stating, "Why did you say that, you're lying."  (Tr. 8).  The court warned appellant that if he opened his mouth again, it would increase his jail time for contempt to one and a half years.  (Tr. 8).

**{¶17}** The witness continued her testimony.  On cross examination, she disclosed that she had made an intimate videotape when she was dating appellant and that he had been using that as leverage against her to prevent her from testifying.  (Tr. 15-16).  She then concluded her testimony and the following occurred:

**{¶18}** "MR. DUMAS:  I have a few questions [of the witness].

**{¶19}** "THE COURT:  Sir, if you want to keep on talking, I am going to remove you from this courtroom and the trial will proceed without you.

**{¶20}** "MR. DUMAS:  You're not God, I don't fear you.

**{¶21}** "THE COURT:  Take him out of the courtroom, please, take him out, take him out.

**{¶22}** "MR. DUMAS:  I have a right - -

**{¶23}** "THE COURT:  You have a year in jail for contempt and the trial will proceed without you.  Do you want to go to jail for a year and a half?

**{¶24}** "MR. DUMAS:  Everybody will see that tape now.

**{¶25}** "THE COURT:  You have a year and a half in jail, Mr. Dumas.

**{¶26}** "MR. DUMAS:  So what."  (Tr. 16-17).

**{¶27}** The trial proceeded without appellant. The trial court found appellant guilty of assault and sentenced him to six months in jail and a $500 fine. This was in addition to the 18 months for contempt.

**{¶28}** Appellant filed a timely notice of appeal on March 15, 2010. The trial court stayed appellant's sentence pending this appeal.

**{¶29}** Appellant now raises three assignments of error, the first of which states:

**{¶30}** "THE TRIAL COURT'S DENIAL OF APPELLANT'S REQUEST FOR NEW COUNSEL VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL OF HIS CHOICE."

**{¶31}** Appellant argues that the court violated his constitutional right to counsel when it denied his request for new counsel. He contends that the court's stated reason of the case being too old was not a valid one to deny him a brief continuance to secure counsel of his own choice.

**{¶32}** A trial court's decision to deny a substitution of counsel and require a trial to proceed with the assigned counsel is reviewed on appeal for abuse of discretion. *State v. Cowans* (1999), 87 Ohio St.3d 68, 73. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157.

**{¶33}** The Sixth Amendment provides for a defendant to have the assistance of counsel for his or her defense. However, there is no right to counsel of the defendant's choice. An indigent defendant does not have the right to have a particular attorney represent him; therefore, the defendant must demonstrate good cause to warrant substitution of counsel. *Cowans*, 87 Ohio St.3d at 72, quoting *United States v. Iles* (C.A.6, 1990), 906 F.2d 1122, 1130. "Good cause" includes such things "'as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" *State v. Pruitt*

(1984), 18 Ohio App.3d 50, 57, quoting *United States v. Calabro* (C.A.2, 1972), 467 F.2d 973, 986.

**{¶34}** "In evaluating a request for substitute counsel, the court must balance, 'the accused's right to counsel of his choice [against] the public's interest in the prompt and efficient administration of justice.' *United States v. Jennings* (C.A.6, 1996), 83 F.3d 145, 148. The court may deny the motion if it finds the motion was made simply to delay the trial, or was not made in good faith." *State v. Davis*, 7th Dist. No. 05-MA-235, 2007-Ohio-7216, at ¶37.

**{¶35}** In this case, appellant gave no reason for his request for new counsel. In fact, appellant must have been satisfied with his counsel when the proceedings began because he did not initially ask the court for new counsel. It was not until after the trial court denied counsel's request for a continuance due to appellant's recent disclosure of potential witnesses and after the trial court denied appellant's request for a jury trial with witnesses that appellant stated that he wanted a new attorney. (Tr. 3). Under these circumstances, it seems clear that appellant's request for new counsel was a delay tactic which he employed only after his other attempts to continue the trial were rejected. Had appellant been faced with a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his counsel, presumably he would have filed a motion for new counsel prior to the day of trial or, at the very least, at the very beginning of the proceedings. Thus, the trial court did not abuse its discretion in denying appellant's request for new counsel on the day of trial.

**{¶36}** Accordingly, appellant's first assignment of error is without merit.

**{¶37}** Appellant's second assignment of error states:

**{¶38}** "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION AFTER IT FOUND APPELLANT GUILTY OF CONTEMPT WITHOUT ALLOWING HIM TO PRESENT A DEFENSE."

**{¶39}** Here appellant argues that the trial court failed to provide him with an opportunity to be heard or present evidence in defense of the contempt charges. He claims this was in violation of his due process rights, R.C. 2705.05, and R.C. 2705.03.

**{¶40}** Contempt can be criminal or civil, direct or indirect. In this case, the trial court found appellant guilty of direct, criminal contempt.

**{¶41}** Criminal contempt is generally characterized by an unconditional prison sentence that operates not as a coercive remedy but as punishment for the completed act of disobedience and to vindicate the court's authority. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253-54.

**{¶42}** Direct contempt has been defined to include "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Denovchek v. Trumbull Cty. Bd. of Commrs.* (1988), 36 Ohio St.3d 14, 16, quoting *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 56. "Courts, in their sound discretion, have the power to determine the kind and character of conduct which constitutes direct contempt of court." *State v. Kilbane* (1980), 61 Ohio St.2d 201, paragraph one of the syllabus.

**{¶43}** Direct contempt usually results from conduct that occurs in the court's presence. Direct contempt may be summarily punished because the facts are directly known by the court. Id. at 204; *State v. Belcastro* (2000), 139 Ohio App.3d 498, 501; R.C. 2705.01. Indirect contempt, on the other hand, occurs outside the court's presence. Since the court does not have personal knowledge of the facts surrounding indirect contempt, it must afford the alleged contemnor with procedural safeguards such as a written charge, an adversary hearing, and the opportunity for legal representation. Id.

**{¶44}** In support of his position, appellant cites to *State v. Riester*, 11th Dist. No. 3771, 2006-Ohio-3771, where the appellate court found that the appellant's due process rights were violated when the trial court failed to afford the appellant the

opportunity to defend against the contempt charges. But that case is inapplicable here because it dealt with indirect contempt. Id. at ¶13.

**{¶45}** A court may summarily punish a person for direct contempt as long as two conditions are met: (1) the contumacious act must be known personally to the court; and (2) the nature of the contempt must establish an imminent threat to the administration of justice so that immediate punishment is required to prevent demoralization of the court's authority before the public. *In re Wingrove*, 4th Dist. No. 02CA4, 2003-Ohio-549, at ¶30.

**{¶46}** These conditions are satisfied here. The contumacious conduct clearly occurred before the court. In fact, most of appellant's contemptuous comments were aimed directly at the court. Furthermore, the contempt established an imminent threat to the administration of justice so that immediate punishment was required to prevent demoralization of the court's authority. Appellant basically told the court that what it said did not matter. This completely undermined the court's authority necessitating immediate punishment.

**{¶47}** Accordingly, appellant's second assignment of error is without merit.

**{¶48}** Appellant's third assignment of error states:

**{¶49}** "THE TRIAL COURT'S SENTENCE OF 18 MONTHS INCARCERATION FOR CONTEMPT WAS ARBITRARY, UNREASONABLE, AND DISPROPORTIONATE TO THE CONTEMPTUOUS CONDUCT, THEREFORE AN ABUSE OF DISCRETION."

**{¶50}** Appellant contends here that the trial court abused its discretion in sentencing him to 18 months in jail for contempt. He points out that his sentence for contempt is three times greater than his sentence on the underlying assault conviction. Appellant asserts that his sentence is not proportionate to his conduct. He points out that R.C. 2705.05(A)(3), which he admits the trial court was not bound by, authorizes a jail term of only 90 days for a third-time contempt.

**{¶51}** A reviewing court will not reverse a trial court's sentence for direct contempt unless it finds that the trial court abused its discretion. *In re Olivito*, 7th

Dist. No. 04-MA-42, 2005-Ohio-2701, at ¶53. The court's sentence must be in proportion to the contemptuous conduct. *State v. King*, 8th Dist. No. 80958, 2002-Ohio-7228, at ¶10.

**{¶52}** When a case involves direct contempt, the limits placed on contempt sanctions by R.C. Chapter 2705 do not apply. *Kilbane*, 61 Ohio St.2d at 204. But they can be used as a guide as to reasonable sentences. *King*, 8th Dist. No. 80958, at ¶12. R.C. 2705.05 provides the following penalties:

**{¶53}** "(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;

**{¶54}** "(2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;

**{¶55}** "(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both."

**{¶56}** In this case, for his first contempt, the trial court sentenced appellant to 60 days in jail. For his second contempt, the court increased appellant's sentence to six months in jail (in effect, an additional 120-day sentence). For his third contempt, the court increased appellant's sentence to one year (in effect, an additional 180-day sentence). And for his fourth contempt, the court increased appellant's sentence to a year and a half (in effect, an additional 180-day sentence).

**{¶57}** Courts have found contempt sentences in somewhat similar cases to be excessive. For instance in *In the Matter of Kemper* (Jan. 31, 1994), 4th Dist. No. 93CA15, the Fourth District found a 30-day contempt sentence was not commensurate with the gravity of the offense where the contemnor yelled, "what the hell do you know" while a vehicular homicide victim's husband was testifying at the sentencing hearing for the contemnor's brother-in-law.

**{¶58}** And in *King*, 8th Dist. No. 80958, King was on trial for felonious assault. The trial court held him in contempt five different times during the trial for making frequent and repeated outbursts that interrupted the testimony of witnesses and the

prosecuting attorney's closing argument. The court sentenced King to 60 days for the first contempt, 30 days for the second contempt, 60 days for the third contempt, six months for the fourth contempt, and 60 days for the fifth contempt, after which the court removed him from the courtroom. The court imposed a total jail time for contempt of one year and 120 days. On appeal, the Eighth District, finding that the trial court abused its discretion in meting out its sentence, stated:

**{¶59}** "While we agree that King showed contempt for the court (a fact that even he does not contest on appeal), we find the punishment meted out to King was an abuse of discretion because the court's cumulative sentence of sixteen months went well beyond what was reasonable for the circumstances. For example, the court sentenced King to sixty days in jail for the first act of contempt. Sixty days in jail is not trivial. It is the sentence given as punishment for the commission of third degree misdemeanors. This much time is significantly more than an offender would receive for disorderly conduct (a minor misdemeanor) and unwarranted since King did nothing more than ask if he could speak while the court tried to admonish him not to blurt out comments in front of the jury. Likewise, the punishment for the fifth contempt citation, six months in jail, was far too severe. A six-month sentence is equivalent to that given for first degree misdemeanors." Id. at ¶11.

**{¶60}** In this case, appellant's comments to the court were clearly disrespectful and contemptuous. And they merited a jail sentence. But they did not warrant a year and a half in jail. Appellant was on trial for misdemeanor assault. The maximum jail sentence he faced was six months. The contempt sentence of one and half years was unreasonable in light of the circumstances surrounding the contemptuous behavior. Thus, the trial court abused its discretion in sentencing appellant for contempt.

**{¶61}** Accordingly, appellant's third assignment of error has merit.

**{¶62}** For the reasons stated above, the trial court's judgment as to appellant's assault conviction is hereby affirmed. Likewise, the trial court's finding of

contempt is affirmed. The sentence for contempt, however, is reversed and the matter is remanded to the trial court for resentencing of appellant.

Vukovich, .J., concurs.

Waite, P.J., concurs.