[Cite as *State v. Hudson*, 2011-Ohio-6424.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 10 MA 157 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| JESSIE HUDSON, | ) | |
| | ) | |
| DEFENDANT | ) | |
| | ) | |
| IN RE: | ) | |
| CONTEMPT OF ATTORNEY | ) | |
| BRIAN TARESHAWTY, | ) | |
| | ) | |
| APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:       Criminal Appeal from Youngstown
Municipal Court,
Case No. 10 TRD 1930.

JUDGMENT:       Affirmed.

APPEARANCES:
For Plaintiff-Appellee:       Attorney Anthony Farris
Law Director
Attorney Dana Lantz
Assistant Law Director
26 S. Phelps Street
Youngstown, OH 44503

For Appellant:       Attorney Louis DeFabio
4822 Market Street, Suite 220
Youngstown, OH 44512

Attorney J. Gerald Ingram
7330 Market Street
Youngstown, OH 44512

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich

Dated:  December 9, 2011

DeGenaro, J.

{¶1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant, Attorney Brian Tareshawty, appeals the decision of the Youngstown Municipal Court finding him in direct contempt of court and fining him $250. Tareshawty contends that the trial court erred in finding him guilty of direct contempt. Second, he asserts that the trial court failed to set forth a complete statement of the factual basis for the contempt finding in its journal entry. Third, he contends that he was denied due process because the court imposed a summary sanction without an evidentiary hearing before an impartial judge. Finally, he argues that the fine of $250 was excessive and an abuse of discretion.

{¶2} Upon review, all of Tareshawty's arguments are meritless. The trial court did not abuse its discretion in finding him in direct contempt for disrupting the court twice despite a warning to stop. Further, the journal entry contains a sufficient factual basis for the contempt finding. A summary sanction was appropriate here because Tareshawty continued to disrupt the court notwithstanding an admonishment to stop. Moreover, the trial judge's comments do not show such a high degree of animosity towards Tareshawty that the judgment should be reversed. Finally, the $250 fine was not an abuse of discretion. Accordingly, the judgment of the trial court is affirmed.

### Facts and Procedural History

{¶3} On September 2, 2010, Attorney Tareshawty appeared in the Youngstown Municipal Court before the Honorable Robert A. Douglas, Jr. to represent Jessie L. Hudson in a misdemeanor sentencing hearing in Case No. 10TRD1930. Before the sentencing hearing began, the following exchange took place between Judge Douglas and Tareshawty:

{¶4} "THE COURT: Counsel, this is the second time I have had to say something to you and this is because of this conversation you got going on across the court here and I don't appreciate it at all.

{¶5} "MR. TARESHAWTY: I apologize.

{¶6} "THE COURT: No. But you keep doing it. I have had to admonish you in my court regularly. You are very contemptuous of this Court. I find you in direct contempt

of this Court. I have tried to be patient with you and ask you to not do it but you continue to do it.

**{¶7}** "MR. TARESHAWTY: I apologize, Your Honor.

**{¶8}** * *

**{¶9}** "MR. TARESHAWTY: Yes, Your Honor. Like I said, I didn't realize I was bothering you.

**{¶10}** "THE COURT: Because you are contemptuous of this Court. You disrupt this Court when you come in here regularly.

**{¶11}** "MR TARESHAWTY: I don't know what you mean, Your Honor. I was sitting fairly patiently.

**{¶12}** "THE COURT: I will tell you what I mean.

**{¶13}** "MR TARESHAWTY: Very well.

**{¶14}** "THE COURT: About ten minutes ago you are standing there, standing talking to one of the prisoners.

**{¶15}** "MR TARESHAWTY: That's my client.

**{¶16}** * *

**{¶17}** "THE COURT: I had to ask you to stop, is that correct, before I had to ask you to stop?

**{¶18}** "MR TARESHAWTY: Yes, Your Honor.

**{¶19}** "THE COURT: Now, this second time you are talking across the hall to an attorney over here, big grin on your face like this is not a court of law, totally disrespectful. I am trying to conduct the business of the Court. That was the second time. So I find you in direct contempt of this Court. You are disrupting me from carrying out the Court's business.

**{¶20}** "MR. TARESHAWTY: Your Honor, I only said hello to Miss Hanni. I didn't say a word to her. I just waved to her. I hadn't seen her for a while. That's the only thing I actually did. And, again, if I disrupted the Court, I apologize.

**{¶21}** "THE COURT: You have done this continually over the years. You apologized after that other incident too when you called me a derogatory name. You

apologized then too, didn't you, and this still goes on.

{¶22} "MR TARESHAWTY: That was a grievance which was dismissed, Your Honor. For the record, I never called anybody anything. I never used a derogatory word to you, Your Honor. I have complete respect for you.

{¶23} "THE COURT: I am confining this to what I just saw in this court before my eyes at this time. My only comment about those previous incidents was that you apologized before but you continue to disrespect this Court.

{¶24} "MR TARESHAWTY: I am doing my best to respect the Court. I apologize, I didn't believe I was disrupting the Court and I maintain that I wasn't disrupting the Court and that I didn't say a word to Miss Hanni. I simply waved to her.

{¶25} "There have been conversations by lawyers in the court his morning that have gone unnoticed. A cell phone went off that has gone unnoticed. But, again, I find myself apologizing to the Court. I apologize, I don't believe that I am in contempt. I have respect for the Court and it appears as though –

{¶26} "THE COURT: That's enough, that's enough.

{¶27} "MR. TARESHAWTY: Very well.

{¶28} "THE COURT: The Court finds counsel in direct contempt of this court for disrupting the proceedings of this court twice, admonished once but disrespected the Court for a second time. The penalty will be $250. Have a seat."

{¶29} On September 2, 2010, the court issued a journal entry finding Tareshawty in direct contempt of court for "disrupting the proceedings of this Court twice, admonished once but disrupted this Court a second time. Penalty: $250."

## Direct Contempt Finding

{¶30} Tareshawty asserts in his first of four assignments of error:

{¶31} "The trial court erred in finding the appellant guilty of direct, criminal contempt."

{¶32} We cannot reverse a finding of contempt by a trial court unless that court abused its discretion. *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 11, 417 N.E.2d 1249. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or

arbitrary. *State v. Lessin* (1993), 67 Ohio St.3d 487, 494, 620 N.E.2d 72; *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218.

**{¶33}** "Contempt can be categorized as either direct, in the presence of the court, or indirect, outside the presence of the court." *Scarnecchia v. Rebhan*, 7th Dist. No. 05 MA 213, 2006-Ohio-7053, at ¶27, citing *In re Lands, Lots or Parts of Lots Omitted From Foreclosure Proceedings-1944* (1946), 146 Ohio St. 589, 595, 67 N.E.2d 433. "The distinction between civil and criminal contempt is based on the character and purpose of the contempt sanctions. If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil. Often, civil contempt is characterized by conditional sanctions, i.e., the contemnor is imprisoned until he obeys the court order. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence or fine. Its sanctions are punitive in nature, designed to vindicate the authority of the court." *Denovchek v. Board of Trumbull County Com'rs* (1988), 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (internal citations omitted).

**{¶34}** This is a case of direct criminal contempt. The trial court found Tareshawty in contempt for his conduct during a court proceeding, and imposed an unconditional $250 fine, which was punitive rather than coercive.

**{¶35}** Direct criminal contempt cases require proof beyond a reasonable doubt. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 416 N.E.2d 610, at syllabus. Direct contempt consists of "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01. Further, the Ohio Supreme Court defined contempt as "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Denovchek*, supra, at 15, quoting *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 271 N.E.2d 815, at paragraph one of the syllabus. In order to uphold a contempt finding, "the record must affirmatively show that the conduct constituted an imminent threat to the administration of justice." *State v. Schiewe* (1996), 110 Ohio App.3d 170, 173, 673 N.E.2d 941.

**{¶36}** Tareshawty argues that the record creates reasonable doubt that he obstructed the administration of justice and the record does not support that he intended

to defy the trial court. He initially questions how the trial court's first request for him to stop talking is part of the contempt finding when it was not deemed contemptuous conduct when it occurred. However, simply because the trial court did not find Tareshawty in contempt for the first incident does not mean that it cannot be considered in the contempt finding. See *City of Warren v. Satterlee*, 11th Dist. No. 2005-T-0010, 2006-Ohio-1460, at ¶20 ("Contempt may be derived from the offender's disruptive act of persistently interrupting the court in disregard of the court's warning to stop."). Although the transcript begins with the second incident, it is clear from the record that the trial court twice stopped proceedings that day to admonish Tareshawty. We must now consider whether Tareshawty's conduct constituted an imminent threat to the administration of justice.

{¶37} In *State v. Perkins*, 154 Ohio App.3d 631, 2003-Ohio-5092, 798 N.E.2d 646, the trial court made a direct criminal contempt finding where the defendant, who appeared before the trial court via video, stated "that's bull[****]" off camera after his case concluded and during another court proceeding. Id. at 634. The Second District affirmed, concluding that the defendant's comment "caused the trial court to temporarily halt those proceedings to investigate who had made the statement and why the statement had been made." Id. at 638. The Second District was unpersuaded by Perkins' argument that he lacked the intent to obstruct the administration of justice because "'[a] person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.'" Id., citing *State v. Mulligan*, 2d Dist. No. 19359, 2003-Ohio-782.

{¶38} Similarly, in *In re Kemper* (Jan. 31, 1994), 4th Dist. No. 93CA15, Kemper was attending a family member's sentencing hearing and interjected, "what the hell do you know!" while the victim's husband was making a statement to the trial court. Id. at 1. The Fourth District affirmed, explaining that the outburst was made during a court proceeding and caused the victim's husband to stop his statement, resulting in the trial judge stopping the proceeding to find Kemper in contempt and have the bailiff remove him from the courtroom. Id. at 2.

{¶39} In contrast, in *State v. Drake* (1991), 73 Ohio App.3d 640, 598 N.E.2d 115, the Eighth District reversed a contempt finding where the defendant directed obscene

language at the trial judge after sentencing, concluding that the incident occurred as Drake was being led out of the courtroom after sentencing, and there was no indication in the record that other proceedings before the trial court had been disrupted. Id. at 642, 644.

{¶40} The circumstances here are similar to those in *Perkins* and *Kemper* and distinguishable from *Drake.* Tareshawty disrupted the trial court twice during proceedings unrelated to his client's hearing. The record reveals that the court had to ask Tareshawty to stop talking, but then ten minutes later, the trial court stopped proceedings again because it found that Tareshawty was talking to another attorney across the courtroom. Although Tareshawty did not disrespect the trial court through a derogatory comment like the defendant in *Perkins*, his behavior was still disrespectful to the trial court in that he apparently continued to talk in open court after the trial court asked him to stop. Furthermore, the natural and probable consequence of talking during court proceedings is disrupting the court and thus, Tareshawty's claim that he did not intend to defy the trial court is meritless.

{¶41} Tareshawty further argues that the judge placed him in an "untenable position" where he either had to violate his professional responsibility to his client by not speaking to him prior to the sentencing hearing or risk a contempt finding, citing *Schiewe*, supra. Tareshawty's reliance on *Schiewe* is misplaced because the circumstances are fundamentally different. In *Schiewe*, the Sixth District reversed a contempt finding where the trial court held that a prosecutor violated a previous order against repetitive and cumulative testimony during the course of a trial. "[T]he trial court's order prohibiting 'repetitious testimony' placed [the prosecutor] in an untenable position: he either had to violate his professional responsibility to his client, the state, and present a case which, in his professional judgment and evaluation, was less than sufficient to sustain its burden of proof, or violate his duty and responsibility, as an officer of the court, to obey its order prohibiting 'repetitious testimony.'" Id. at 177. Here, Tareshawty was speaking with his client while waiting for the sentencing hearing to begin. He could have spoken with his client before they were in the courtroom together, or he could have asked the trial court for a few minutes to confer with his client before the sentencing hearing proceeded.

**{¶42}** Finally, Tareshawty asserts that the trial court erred when it took judicial notice of his prior alleged misconduct. While the trial court did mention that Tareshawty regularly disrupts proceedings and mentioned a prior incident where he allegedly called the trial court a derogatory name, the trial court specifically stated it was not relying on prior incidents. The transcript and journal entry both disclose that the trial court based its contempt finding upon the two incidents that occurred that day. For these reasons, Tareshawty's first assignment of error is meritless.

### Factual Basis for Contempt Finding in Journal Entry

**{¶43}** Tareshawty asserts in his second assignment of error:

**{¶44}** "The trial court's finding of direct, criminal contempt must be reversed based upon the failure of the trial judge to prepare a journal entry or order containing a complete and clear statement of the facts upon which the contempt conviction was based."

**{¶45}** "[T]he general rule in cases of direct contempt is that the trial court's judgment or order of direct contempt must itself contain a complete and clear statement of the facts upon which the conviction is based." *In re Lodico*, 5th Dist. No. 2003-CA-00446, 2005-Ohio-172, at ¶41, citing *Schiewe*, supra, at 173; *State v. Moll* (Jan. 10, 1992), 6th Dist. No. 91WD010; *State v. Treon* (1963), 91 Ohio Law Abs. 229, 316, 188 N.E.2d 308.

**{¶46}** The trial court's journal entry states: "The Court finds Counsel in direct contempt of this Court for disrupting the proceedings of this Court twice, admonished once but disrupted this Court a second time. Penalty: $250."

**{¶47}** It is true that this journal entry does not go into great detail regarding the two incidents which were the basis for the contempt finding. Although the trial court could have provided more specific detail regarding the nature of Tareshawty's disruptions, this does not preclude appellate review. The journal entry does not simply conclude that Tareshawty was in contempt for disrupting the proceedings; rather it specifies that he disrupted proceedings twice, even after the trial court admonished him after the first incident.

**{¶48}** A review of cases where appellate courts have reversed a contempt finding based on an insufficient journal entry reveals that those journal entries are devoid of any

factual basis for the contempt finding, unlike the entry in the instant case. For example, in *In re Summers*, 9th Dist. No. 24981, 2010-Ohio-5993, the Ninth District reversed and remanded a finding of direct criminal contempt because the trial court's order failed to set forth the facts leading to the contempt finding; it only provided that the appellant "was in 'direct and willful contempt of [the trial court]'" and stated the punishment. Id. at ¶7. See, also, *State v. Milano* (Feb. 12, 1976), 8th Dist. No. 34459 ("Atty. J. Milano found in contempt of court pursuant to R.C. 2705.01. Fine $50 and costs."); *White v. Kiraly* (Mar. 20, 1975), 8th Dist. No. No. 34085 ("Plaintiff found in contempt of court during course of proceedings. Plaintiff sentenced to County Jail for a period of 3 days. Upon request of counsel [ ] court sets the sum of $500.00 as appeal bond on contempt action."). Here, the trial court's journal entry contains a complete statement of facts. Accordingly, Tareshawty's second assignment of error is meritless.

### Summary Finding of Contempt

{¶49} In his third assignment of error, Tareshawty asserts:

{¶50} "The appellant was denied due process of law when he was not given a full hearing, before an impartial judge, prior to the finding of contempt."

{¶51} Although a trial judge may summarily impose a punishment for direct contempt, R.C. 2705.01, not every case of direct criminal contempt justifies a summary sanction without a hearing. *Bank One Trust Co., N.A. v. Scherer*, 176 Ohio App.3d 694, 2008-Ohio-2952, 893 N.E.2d 542, at ¶44. "A court may summarily punish a person for direct contempt as long as two conditions are met: (1) the contumacious act must be known personally to the court; and (2) the nature of the contempt must establish an imminent threat to the administration of justice so that immediate punishment is required to prevent demoralization of the court's authority before the public." *State v. Dumas*, 7th Dist. No. 10-MA-50, 2011-Ohio-1003, at ¶45.

{¶52} Tareshawty's conduct took place in the presence of the court. He argues, however, that his conduct did not create the need for summary action to immediately suppress his conduct to restore order to the court proceedings. We disagree; summary sanction was necessary because Tareshawty continued to disrupt the court proceedings after having been asked to stop.

**{¶53}** Tareshawty also asserts that the trial judge's references to alleged prior contemptuous conduct show that the judge was biased against him. Based on these comments, Tareshawty contends that since Judge Douglas did not act as a neutral and detached fact-finder, the judgment should be reversed and remanded for an evidentiary hearing before a different judge. Specifically, he argues that the following comments demonstrate the court's bias:

**{¶54}** "You disrupt this Court when you come in here regularly."

**{¶55}** "You have done this continually over the years. You apologized after that other incident too when you called me a derogatory name. You apologized then too, didn't you, and this still goes on."

**{¶56}** "An accused contemnor has the right to an impartial judge who has not become personally embroiled in the contempt issue." *State v. Daly*, 2d Dist. No. 06-CA-20, 2006-Ohio-6818, at ¶52, citing *Offutt v. U.S.* (1954), 348 U.S. 11, 13-14, 75 S.Ct. 11. "In *Liteky v. United States* (1994), 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474, the Supreme Court held that 'opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.' On the other hand, '[t]hey *may* do so [support a bias challenge] if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.' (Emphasis sic.) Id." *State v. Dean (Dean II)*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, at ¶49.

**{¶57}** Tareshawty contends that a judge should recuse himself or herself from the contempt proceedings in cases where the basis for the contempt is a personal attack on the judge. See *In re Lodico*, supra, at ¶99. However, the basis for the contempt was not because of a personal insult to the trial judge; it was for interruptions that were not directed at the judge. The trial judge's comments refer to a prior incident of a personal

insult and an opinion formed during prior proceedings that Tareshawty regularly disrupts the court. Thus, the judgment in this case will only be reversed and remanded if Judge Douglas' comments reveal a degree of bias making "fair judgment impossible." *Dean II*, supra, at ¶49.

{¶58} In *State v. Dean (Dean I)*, 2d Dist. No. 2006CA61, 2006CA63, 2007-Ohio-1031, a capital murder case, the state filed a certification pursuant to Crim.R. 16(B)(1)(e) that disclosure of a witness' address might cause her harm, and the defendant requested a hearing on the certification. Id. at ¶3. After the hearing, defense counsel filed a motion for the court to disqualify itself, citing *State v. Gillard* (1988), 40 Ohio St.3d 226, 533 N.E.2d 272. Id. at ¶5. After the court overruled the motion, defense counsel filed an application for disqualification with the Ohio Supreme Court, which was denied. Id. at ¶6-7. The trial court informed defense counsel that it had serious concerns about them which it would address later on. Id. at ¶8. The attorneys filed a motion to withdraw, which the court denied. Id. at ¶9. After the trial concluded, the trial court found the attorneys in direct criminal contempt for manipulating the court into a Crim.R. 16(B)(1)(e) hearing so that the judge would be disqualified from presiding over the trial. Id. at ¶10.

{¶59} On appeal, the Second District held that the trial court's comments showed that it was not an impartial fact-finder notwithstanding its statements it would not prejudge the issue, and another judge should have conducted an evidentiary hearing:

{¶60} "In responding to defense counsel's affidavit of disqualification, the trial court indicated that it felt compelled to respond to the affidavit 'since it appears, in part, to be a personal attack on my integrity and competence as a Judge.' Later, in its ruling on the contempt, the trial ruling on the contempt, the trial court found that 'defense counsel had a dual motive for having this Court removed from the case. * * * Their second motive stems from a longstanding personal revulsion of the Court, dating back to when this Judge was an assistant prosecuting attorney. Accordingly, the Court vehemently disagrees with Mr. Butz's statement that "This is not a personal attack on the Court."'" Id. at ¶32-33.

{¶61} Here, Judge Douglas' remarks regarding the prior derogatory comment do not reveal such a high degree of animosity as that of the trial judge in *Dean I* who felt that

the attorneys' conduct was a personal attack on him. The trial judge here was not so embroiled in the case that he could not act as a neutral fact-finder. Indeed, after the judge made the comment regarding Tareshawty's earlier insult, he stated that he was confining his contempt finding to what had occurred in court that day and explained that "[m]y only comment about those previous incidents was that you apologized before but you continue to disrespect this Court." Thus, Judge Douglas properly acted as a neutral and detached fact-finder and his comments do not support a bias challenge. Accordingly, Tareshawty's third assignment of error is meritless.

### Excessive Fine

{¶62} Tareshawty asserts in his fourth and final assignment of error:

{¶63} "The fine of two hundred and fifty dollars ($250.00) imposed upon the appellant was excessive and constituted an abuse of discretion."

{¶64} "An appellate court will not reverse the punishment imposed by the trial court in a direct contempt absent a showing of abuse of discretion." *In re Kafantaris*, 7th Dist. No. 07-CO-28, 2009-Ohio-4814, at ¶46, citing *State v. Kilbane* (1980), 61 Ohio St.2d 201, 207, 400 N.E.2d 386.

{¶65} In cases of direct contempt, the limits placed by R.C. Chapter 2705 on sanctions for indirect contempt do not apply. *Kilbane* at 204. Rather, "courts are not limited by legislation but have the power to impose a penalty reasonably commensurate with the gravity of the offense." Id. at paragraph one of the syllabus. However, this court has found that these limits can be used as a "guide" for reasonable sanctions for direct contempt. *Dumas*, supra, at ¶52. For a first offense of indirect contempt, a court may fine the contemnor not more than $250 and impose a jail sentence of not more than thirty days. R.C. 2705.05(A)(1).

{¶66} The trial court fined Tareshawty $250, which is the maximum fine allowed for indirect contempt. However, he did not receive any jail time, so his punishment would not be the maximum sanction allowed for indirect contempt. Thus, the $250 fine is a reasonable punishment since it does not exceed the limit for indirect contempt sanctions.

{¶67} In *Satterlee*, supra, an attorney repeatedly interrupted the court despite numerous warnings to stop, which impeded the court's ability to reschedule a trial. Id. at

¶6. The trial court found the attorney in direct contempt and imposed a three-day jail sentence and fine of $500. Id at ¶7. The Eleventh District affirmed the contempt finding but found that the jail sentence was excessive for the attorney's conduct and a fine alone would be sufficient punishment; however, since the attorney had already served the sentence, the court noted that the issue was not before it. Id. at ¶22-23.

{¶68} Upon review of Tareshawty's conduct, the $250 fine was reasonably commensurate to his offense. Tareshawty's conduct was similar in nature to that of the attorney in *Satterlee*, but less of an interruption since he only interrupted the court twice and was admonished once, in comparison to the repeated interruptions and numerous warnings in *Satterlee*. Accordingly, Tareshawty's fourth assignment of error is meritless.

{¶69} In conclusion, the trial court did not abuse its discretion in finding Tareshawty in direct contempt for interrupting the court twice, even after being warned to stop; this necessitated a summary sanction to prevent continued disruptions and vindicate the trial court's authority. The trial judge's comments do not show such a high degree of animosity, and the $250 fine was not an abuse of discretion. Finally, the journal entry contains a sufficient factual basis for the contempt finding. Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Vukovich, J., dissents with dissenting opinion.

VUKOVICH, J., dissenting:

{¶70} It is well settled that a trial court judge is entitled to a presumption that its findings of fact are correct. See, e.g., *International Merchandising Corp. v. Mearns* (1989), 63 Ohio App.3d 32. However, when a judge finds that a person has been guilty of direct criminal contempt of court, that guilt must appear affirmatively in the record. 17 Ohio Jurisprudence 3d (2001) 324, Contempt, Section 60.

{¶71} Here, a lawyer is in municipal court waiting for his case to be called. The judge apparently admonished the lawyer for talking to his client (a prisoner awaiting a sentencing hearing). Approximately ten minutes later, the lawyer either talked to another lawyer or merely waved to another lawyer in the courtroom. For this, he was found to be

in direct contempt of court.

**{¶72}** From the dialogue between the judge and the lawyer, the judge was given the respect and courtesy due to his position. Repeatedly, appellant referred to "Your Honor," apologized, and denied he spoke to anyone else after being admonished for talking to his client. "* * * I apologize, I didn't believe I was disrupting the Court and I maintain that I wasn't disrupting the Court and that I didn't say a word to Miss Hanni. I simply waved to her." (Tr. p. 5, l. 17-20).

**{¶73}** Moreover, it appears from the record that the Judge and the appellant had a history.

**{¶74}** "The Court: You have done this continually over the years. You apologized after that other incident too when you called me a derogatory name. You apologized then too, didn't you, and this still goes on.

**{¶75}** "Mr. Tareshawty: That was a grievance which was dismissed, Your Honor. For the record, I never called anybody anything. I never used a derogatory word to you, Your Honor. I have complete respect for you." (Tr. p. 5, l. 1-10).

**{¶76}** I also have a great respect for the trial court judge. But in this instance, and solely from the facts set forth in the record, I must conclude that appellant's alleged contemptuous conduct does not affirmatively appear in the record. Accordingly, I would hold that the trial court abused its discretion in finding appellant in contempt and sustain appellant's first assignment of error.