**[Cite as *State v. Felson*, 2023-Ohio-3071.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220559 |
| | | TRIAL NO. 22CRB-17254 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| EDWARD FELSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 1, 2023

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Danielle Ferris*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Edward Felson*, pro se.

**BERGERON, Presiding Judge.**

{¶1}    During a hearing regarding his client's failure to comply with discovery requests, the trial court held defendant-appellant Edward Felson in direct criminal contempt after an outburst in which he voiced displeasure with the court's ruling that held him accountable, jointly and severally, with his client for attorney's fees.  Mr. Felson was ultimately ordered to pay a $250 fine at the show cause hearing that followed.  He now appeals, insisting that the trial court erred by finding him in contempt and endeavoring to minimize the significance of his actions.  After reviewing the record, however, we find his argument unpersuasive and affirm the trial court's judgment.

I.

{¶2}    In September 2022, Mr. Felson appeared before the trial court to defend his client in a sanctions hearing concerning his client's failure to comply with discovery requests.  Having just returned from a three-week international vacation the night before, Mr. Felson professed that he had not yet read the opposing party's motion filed during his vacation thanks to poor internet connections abroad.  He accordingly requested more time to review the motion, offering up a week as a suitable time-period to analyze the 55-page motion.  The court, however, granted him only a five-minute recess before proceeding with the hearing.

{¶3}    Prior to this September hearing, the trial court had admonished Mr. Felson twice before at two separate hearings, once for interrupting and being dismissive of the court, and a second time for making unwarranted attacks against opposing counsel.  These admonishments did not have their intended effect, as Mr.

Felson interrupted or spoke out of turn during the September hearing at least eight different times, interrupting both opposing counsel and the trial court judge.

{¶4} As the hearing wound down, the trial court ultimately found Mr. Felson and his client jointly and severally liable for sanctions related to discovery improprieties. The following exchange then prompted the contempt finding:

The Court: Defense Counsel, Edward J. Felson, is jointly and severally liable for the $15,351 –

Mr. Felson: Aw, Judge, you can't do that.

The Court: -- and the total fee.

Mr. Felson: That's ridiculous. Come on, Judge. Really?

The Court: Mr. Felson, you're now in contempt. You're now in contempt, sir. That's totally disrespectful. You'll be down here for a hearing of show cause.

{¶5} At the subsequent show cause hearing, Mr. Felson insisted that he did not harbor any contemptuous feelings towards the court, suggesting that the contempt charge stemmed from the court's personal dislike of him. The court responded that Mr. Felson was cited for contempt "based on [his] lack of respect for the court and discourteous treatment." The court also discussed previous (unheeded) warnings that Mr. Felson had received concerning his conduct. The court ordered him to pay a $250 fine, leading to this appeal.

## II.

{¶6} In his sole assignment of error, Mr. Felson argues that the trial court erred in finding him in direct criminal contempt. He insists that his allegedly contumacious comments—saying, "That's ridiculous. Come on, Judge,"—were made

3

at the end of the hearing and did not obstruct the administration of justice to a level that would warrant finding him in contempt. The state responds that the frequency of Mr. Felson's interruptions during the hearing and the content of his final interruption—which challenged the court's authority to impose sanctions—elevated the conduct to a contemptuous level.

{¶7} Appellate courts in Ohio "review a trial court's contempt sanction under an abuse-of-discretion standard." *Heekin v. Silver Rule Masonry, Inc.*, 1st Dist. Hamilton No. C-100585, 2011-Ohio-2775, ¶ 10. "An abuse of discretion connotes more than a mere error of judgment; rather, 'it implies that the court's attitude is arbitrary, unreasonable, or unconscionable.' " *Hayes v. Durrani*, 1st Dist. Hamilton No. C-190617, 2021-Ohio- 725, ¶ 8, quoting *Boolchand v. Boolchand*, 1st Dist. Hamilton Nos. C-200111 and C-200120, 2020-Ohio-6951, ¶ 9. An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah,* 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶8} The trial court held Mr. Felson in direct criminal contempt. "Direct contempt is misbehavior that is committed in the presence of the court in its judicial function, and that obstructs the due and orderly administration of justice." *State v. Webster,* 1st Dist. Hamilton Nos. C-070027 and C-070028, 2008-Ohio-1636, ¶ 56, citing R.C. 2705.01, and *In re Lands*, 146 Ohio St. 589, 595, 67 N.E.2d 433 (1946). " 'Criminal contempt * * * is usually characterized by an unconditional prison sentence or fine. Its sanctions are punitive in nature, designed to vindicate the authority of the court.' " *State v. Hudson*, 7th Dist. Mahoning No. 10 MA 157, 2011-Ohio-6424, ¶ 33,

quoting *Denovchek v. Bd. of Trumbull Cty. Commrs.,* 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988).

**{¶9}** A court may punish a person for direct contempt when two conditions are met. "First, the judge must have personal knowledge of the disruptive conduct 'acquired by his own observation of the contemptuous conduct.' " *State v. Stegall,* 1st Dist. Hamilton Nos. C-110767, C-120112 and C-120113, 2012-Ohio-3792, ¶ 40, quoting *In re Oliver,* 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682 (1948). No one disputes that Mr. Felson's comments occurred before the judge, satisfying this requirement. "Second, the conduct must pose 'an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public' that, if 'not instantly suppressed and punished, demoralization of the court's authority will follow.' " *Id.*

**{¶10}** Contempt cannot be found when conduct simply offends the court's sensibilities, but it must "pose an actual or imminent threat to the administration of justice." *Webster* at ¶ 57, citing *State v. Conliff,* 61 Ohio App.2d 185, 189, 401 N.E.2d 469 (10th Dist.1978). Judges should be careful not to become "personally embroiled" in a contempt hearing to the extent that there is "bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite,* 376 U.S. 575, 588, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

**{¶11}** Mr. Felson compares his comments at the end of the sanction hearing to those at issue in *Conliff* and *State v. Drake,* 73 Ohio App.3d 640, 643-644, 598 N.E.2d 115 (8th Dist.1991). In *Conliff,* a direct criminal contempt charge was reversed on appeal when the defendant asked the sentencing judge between hearings if the

5

judge was going to take his "pound of flesh" and sentence him. *Conliff* at 188. The appellate court in *Conliff* found that this statement, while offensive to the court's sensibilities, did not rise to the level of contempt because the comment was singular, occurred off the record at the end of the proceeding, and did not " 'impede, embarrass or obstruct the court in the performance of its functions.' " *Id.* at 190, quoting *In re Green,* 172 Ohio St. 269, 175 N.E.2d 59 (1961), paragraph one of the syllabus. In *Drake,* a contempt conviction was similarly overturned when the defendant used profane language towards the judge as he was being led out of the courtroom after proceedings had concluded. *Drake* at 644. The *Drake* court found that the outburst, while rude and improper, did not pose an imminent threat to the administration of justice or disrupt the court proceedings. *Id.*

{¶12} By contrast, the state likens Mr. Felson's situation to that in *Hudson,* 7th Dist. Mahoning No. 10 MA 157, 2011-Ohio-6424, at ¶ 40, where a contempt conviction was upheld when the court had issued a prior warning to the defendant. The trial court found the defendant in *Hudson* in contempt after he continued to talk during court proceedings after the court had instructed him to stop. *Id.* Though the defendant's comments were not boisterous or derogatory in nature, the *Hudson* court held his behavior was improper because his soliloquy interrupted proceedings and he continued talking even after the court ordered him to stop. *Id.*

{¶13} Here, we find that Mr. Felson's actions during the sanctions hearing are distinguishable from those in *Conliff* and *Drake.* First, the comments made by Mr. Felson were made on the record as the judge attempted to hand down his decision (rather than after the fact). Furthermore, like *Hudson*, Mr. Felson had already been warned about interrupting both the court and opposing counsel numerous times both

during the hearing in question and in two prior hearings. And while the attorney in *Hudson* was held in contempt after a mere two interruptions, Mr. Felson interrupted eight times before the trial court intervened. *See Hudson* at ¶ 40.

{**¶14**} Furthermore, we cannot focus myopically on Mr. Felson's final comment: "That's ridiculous. Come on Judge,"—which, admittedly, seemed to be the final straw for the trial court. We must take into consideration the full picture of the context of counsel's behavior at the hearing as we have described above. We find that the nature of his interruptions, particularly his final comments, of telling the trial judge that "you can't do that" and describing the court's ultimate decision as "ridiculous," called into question and undermined the nature of the trial court's authority. In other words, his comments demonstrated an " 'open threat to the orderly procedure of the court.' " *Stegall,* 1st Dist. Hamilton Nos. C-110767, C-120112 and C-120113, 2012-Ohio-3792, at ¶ 40, quoting *Oliver,* 333 U.S. at 275, 68 S.Ct. 499, 92 L.Ed. 682.

{**¶15**} Given the nature of Mr. Felson's conduct, and the measured $250 fine that the court assessed, we cannot say that the trial court abused its discretion in finding him in direct criminal contempt. We overrule Mr. Felson's assignment of error.

*       *       *

{**¶16**} In light of the foregoing analysis, we overrule Mr. Felson's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BOCK** and **KINSLEY, JJ.,** concur.

7

Please note:

The court has recorded its entry on the date of the release of this opinion.